ARCTIC CATERING, INC. applicant on Behalf of Frederick MacMILLAN, beneficiary, Plaintiffs,

v.

U.S. Attorney General, Dick THORN-BURGH; and the United States Immigration and Naturalization Service, Defendants.

Civ. A. No. 90–K–165.

United States District Court, D. Colorado.

July 22, 1991.

As corrected July 24, 1991.

Woon Ki Lau, Lau & Choi, Denver, Colo., for plaintiffs.

James W. Winchester, Asst. U.S. Atty., Denver, Colo., for defendants.

MEMORANDUM OPINION
AND ORDER

KANE, Senior District Judge.

Plaintiff, Arctic Catering, seeks review of an Immigration and Naturalization Service ("INS") decision denying the visa application of one of its employees, Frederick G. MacMillan.

I. *Background.*

In 1983, MacMillan, a citizen of Canada, entered the United States on a non-immigrant "L" visa awarded under 8 U.S.C. § 1101(a)(15)(L). He went to work for Arc-

tic Catering. While in the United States, MacMillan's career with Arctic thrived. In 1986, he was promoted to his current position as general manager. The general manager at Arctic is one notch below president of the company. MacMillan oversees the operation of the corporation which grosses approximately 3.5 million dollars annually. His responsibilities include: bidding and negotiating contracts with large corporate clients; corporate financial planning; technical design; and purchasing sophisticated equipment.

Arctic's business is catering to the living needs of workers at geophysical drilling and mining camps in remote regions of the world. The remote location of Arctic's clients requires complex logistical planning and operations. The exhibits attached to the plaintiff's complaint attest to MacMillan's skill and success as general manager of Arctic Catering.

On August 22, 1986, MacMillan and Arctic applied to the INS for a "third preference" immigrant visa under the terms of 8 U.S.C. § 1153(a)(3). For these prospective immigrants, Congress established quotas and a preference system. The higher the preference category, the shorter the wait for an immigrant visa. Third preference visas are reserved, in part, for immigrants who are "members of the professions." Congress expressed, as a matter of immigration policy, a preference for immigrants who are "professionals."[1]

> Visas shall next be made available, in a number not to exceed 10 per centum of the number specified in section 1151(a) of this title, to qualified immigrants who are members of the professions, or who because of their exceptional ability in the sciences or arts will substantially benefit prospectively the national economy, cultural interests, or welfare of the United States, and whose services in the professions, sciences, or the arts are sought by an employer in the United States.

8 U.S.C. § 1153(a)(3) (1970 & Supp.1990). The issue is whether MacMillan is a "professional" or his position with Arctic Cater-

ing qualifies him as a "member of the professions." The INS believes it does not.

Congress defined the term, profession, by example. "The term 'profession' shall include *but not be limited to* architects, engineers, lawyers, physicians, surgeons, and teachers in elementary or secondary schools, colleges, academies, or seminaries." 8 U.S.C. § 1101(a)(32) (1970) (emphasis added) The Administrative Appeals Unit, (AAU) in its final denial of MacMillan's application for a third preference visa, stated, "Managerial positions are generally not considered jobs which require the services of members of the professions." (AAU Decision, Oct. 28, 1989, at 3).

The parties filed cross-motions for summary judgment. Under FRCP 56, summary judgment is proper upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In this case, there is no dispute about the operational activities of Arctic Catering or the personal qualifications of MacMillan. The sole issue is whether MacMillan's position satisfies the statutory requirements of a "profession." Since the issue is one of statutory interpretation, the case is resolved by summary judgment.

II. *Standard for Review of Agency Decision.*

In reviewing the interpretation of "profession" asserted by the INS, I am bound by the Supreme Court's direction in *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter ... If, however, the court determines Congress has not directly ad-

---

**1.** I have employed quotation marks around this word so as to distinguish between the meaning given to it in the newspeak of the statute with its accompanying agency construction and its vastly different historic meaning. This logomachy is the root of the instant controversy.

dressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. at 2781–82 (footnotes omitted).

Following the instructions in *Chevron,* the Tenth Circuit explained interpretations of a statute by an agency which is charged with its enforcement are "entitled to considerable deference and should be disturbed only if unreasonable." *Dole v. Occupational Safety & Health Review Comm'n,* 891 F.2d 1495, 1496–97 (10th Cir. 1989); *rev'd sub nom.* on other grounds, *Martin v. Occupational Safety & Health Review Comm'n,* —— U.S. ——, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991). Once the reviewing court determines the agency's interpretation is reasonable, the court may not disregard the agency decision even if the court prefers a different interpretation. The Tenth Circuit held, "[A]n agency's interpretation of a statute entrusted to that agency for administration should be accepted if it is a reasonable one, even if another interpretation may exist that is equally reasonable." *Utah Power & Light v. Secretary of Labor,* 897 F.2d 447, 450 (10th Cir.1990).

The issue in this case is whether the general manager position at Arctic requires a "member of the professions." If so, MacMillan may be counted as a "professional" by virtue of his position with Arctic and his visa application is approved. This "precise issue in question" was not addressed by Congress. Congress supplied examples of occupations which qualify as professions. From this list, Congress intended the reader to deduce a definition of "profession" by isolating the common thread running through the enumerated occupations. Since Congress did not address MacMillan's specific position, I conclude, under *Chevron,* the term "profession" is ambiguous.

Since the term is ambiguous, the next inquiry is whether the "agency's answer is based on a permissible construction of the statute," *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782. Under the Tenth Circuit's decisions in *Dole* and *Utah Power & Light,* I review the interpretation articulated in the INS decision for reasonableness. Showing deference to the agency, I will not attach a different interpretation to the word "profession" if I conclude the agency's reading is reasonable.

III. *Reasonableness of Agency Decision.*

The final INS Administrative Appeal Unit decision explains the INS' conception of a "professional." A "professional," it is said, is a person who, by virtue of a course of study culminating in at least a baccalaureate degree, possesses special knowledge and training. The schooling must be specifically tailored to people entering the field. Alternatively, there are exceptions to the degree requirement for special occupations. The job itself can qualify a person as a "member of the professions" if the job is unique and requires special skills which distinguish it from similar positions.

[T]he degree requirement should be an industry-wide standard among similar firms and institutions, or, in the alternative, an employer may demonstrate that the duties of the particular occupational position are so unique that they can only be performed by a member of the professions and require abilities beyond the industry standard. Additionally, it must be shown the employer normally imposes the requirement.

(AAU Decision, Oct. 28, 1989, at 3). Hence, an enterprise qualifies as a profession by limiting members to those who obtain specific degrees. Alternatively, a particular position will be deemed to require a "member of the professions" if the position is so complex—exceeding normal industry standards—it can only be filled by someone with unique abilities. This person is thus deemed a "professional."

First, the "specific degree" component of the INS interpretation of the term profes-

sion is reasonable.[2] Each of the professions enumerated by Congress requires a specific course of study. The mere award of a college degree, however, is not an admission into a profession. Every college graduate is not a "professional."

Hence, INS' decision that Arctic and MacMillan fall short of the specific degree requirements is reasonable. In this case, there is no indication Arctic normally requires employees of MacMillan's position to possess specific degrees. Also, Arctic failed to prove similar firms require employees with specific degrees in similar positions. MacMillan himself does not have the kind of degree which satisfies the INS requirement. Although he boasts two baccalaureate degrees from Canadian universities, the degrees are in fields unrelated to his duties at Arctic.

Second, the "unique" abilities component fills a gap left by the specific degree requirement. Likewise, it is reasonable. While every degree does not assure membership in a profession, every profession does not have a corresponding degree. The INS recognizes this incongruity and conducts a factual inquiry into the specific responsibilities and complexity of the proposed position.

Managers generally, according to INS precedent, are not considered as "members of the professions." *Matter of Caron*, Interim.Dec. 3085 (Comm.1988). In the AAU decision in this case, the examiner drew a distinction between positions which entail actual performance of complex tasks and those positions which are supervisory. (AAU Decision, October 28, 1989 at 3). Since MacMillan is simply a manager, the examiner concluded his position does not entail any complexity beyond that normally associated with managers from companies of a similar size. Put simply, the INS was not convinced managing catering operations in remote places was sufficiently more complicated than other management positions in general.

Arctic attacks the AAU decision for failing to recognize the complexity of its operation and acknowledge the unique skill of MacMillan. From the record assembled by Arctic, I understand the difficulties of administering catering services for oil camps in secluded regions of the world are indeed unique. This is no weekend lawn party for the "Silver Palate" ladies. MacMillan's role in the operation is extensive. He negotiates with corporate clients to understand their particular needs. From these negotiations, he designs a living environment to suit the needs of a resident labor force comprised of many cultures. In addition to his duties as host, MacMillan is responsible for the financial health of Arctic.

Napoleon's observation that an army marches on its stomach is relevant here. A drilling operation's productivity is linked to the quality of its operators. Arctic's clients are not typically found in accessible places. They could sit near the arctic circle on top of layers of permafrost or in deserts baked by the sun. The logistics of operating living environments which satisfy Arctic's clients demand finesse and experience.

Letters of praise from Arctic's clients attest to the competence of MacMillan. The letter from the University of Wyoming's William Frerichs, however, carries little weight. Although long on the historical evolution of professionals in the work place, Frerichs' letter sheds little light on evaluating MacMillan's work experience for credit towards a specific degree or unique skills which might substitute for a degree.

In reviewing the agency's decision, I recognize that the decision to grant a third preference visa is within the sound discretion of the administrator. His decision, however, must be grounded on findings of fact. Those facts must be reasonably supported by substantial evidence taken from the record as a whole. *Lindenberg v. United States*, 657 F.Supp. 154, 157 (D.D.C.1987). *See Bowman Transporta-*

---

**2.** INS does not argue a baccalaureate degree is an absolute requirement before a person is deemed a "professional." Such a requirement was found to be an abuse of discretion. *See Augat, Inc. v. Tabor*, 719 F.Supp. 1158, 1160–61 (D.Mass.1989).

*tion Inc. v. Arkansas–Best Freight System,* 419 U.S. 281, 284–285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974).

The final Administrative Appeals Unit decision is the only written reply which specifically addresses MacMillan's "unique" occupation argument as an exception to the INS's degree requirement. After reading this opinion, in the context of the entire record, I find it deficient for the following reasons: First, I find the agency's distinction between actual performance verses mere supervision of tasks unsubstantiated. At page 2, the AAU officer proclaims, "Consideration of a claim to such eligibility focuses on the tasks, demands, duties and actual requirements of the position in question." (AAU Decision, October 28, 1989).

Later in the opinion, the administrator repeats the summary of MacMillan's responsibilities as described by Arctic. Following this description, the administrator makes the bald conclusion that "the aforementioned duties are clearly responsible managerial duties." (*Id.*) Without any factual showing, the administrator concludes MacMillan merely oversees rather than performs the tasks described. This conclusion finds little support in the record.

Even if the conclusion were true, I fail to see how this affects the "unique" status of MacMillan's position at Arctic. The agency articulates its longstanding position that management or supervisors are not considered "professionals" despite the fact that all such positions "have certain elements of complexity." (Id. at 3) The statute and the agency's earlier policy formulation do not support this conclusion. The subject of inquiry is the uniqueness of the occupation; the occupation itself may be deemed to require "a member of the professions." Hence, a person may be a "professional" by virtue of occupying such a position.

I recognize it is the applicant's burden to prove itself qualified for a preference visa, *Omni Packaging, Inc. v. United States,* 733 F.Supp. 500, 503 (D.Puerto Rico 1990). In this case, however, the agency's conclusion that MacMillan merely supervises is unsubstantiated in the record. Further, the agency's conclusion that managers, as a whole, are generally not professionals sheds little light on the uniqueness of MacMillan's duties and position.

A second problem I find in the decision arises when the agency compared Arctic's general management position to comparable management positions in other fields. After stating its premise that managers are generally not "professionals," the agency, as a fall back, explains, "Nevertheless, this particular position does not seem significantly more complex than comparable managerial positions which involve travel and the supervision of fifteen to forty individuals." (Id.) I presume the genesis of this statement was the "require[ment of] abilities beyond the industry standard" language I quoted earlier. I am not ignoring the agency's requirement that a particular position stand out in complexity when compared to similar positions. I dispute, however, the agency's failure to define the positions against which MacMillan is compared. Operating living quarters for mineral exploration in remote regions of the world is certainly uncommon.

The agency need not formulate special standards for every occupation known to humankind. Some occupations do not easily lend themselves to comparisons and this, standing alone, does not make them unique for immigration purposes. The agency, however, offers little about what MacMillan's position is being compared against. Possible candidates are supervisors of "fifteen to forty individuals," or "positions which involve travel." (Id.) Neither selection seems to fit MacMillan's role at Arctic. The agency might have selected positions within the hotel business, the long-range catering industry or mining business. Regardless of what the agency uses to compare, it must explain the basis for that comparison. If the agency incorporates a reference to similar positions as part of its "uniqueness" exception, the agency must clearly classify the applicant's field. Otherwise, the decision is arbitrary and without the support of evidence in the record.

**1172**

Two recent decisions cited by Arctic deserve mention. In *Hong Kong T.V. Video Program, Inc. v. Ilchert*, 685 F.Supp. 712 (N.D.Cal.1988), the court reviewed the INS' determination that the president of a video distributing corporation is not a professional position. The AAU decision in this case distinguishes the decision by explaining *Hong Kong T.V.* "do[es] not directly approach the question of whether an occupational position requires the services of a member of the professions. Instead [it is] principally concerned with the requirements of membership in the professions." (AAU Decision, October 28, 1989 at 3). Unfortunately, the appeals officer has hit on a distinction without a difference. If Mac-Millan qualifies for membership in a profession, his visa is granted. Likewise, if his job at Arctic meets the standards for requiring a member of the professions, MacMillan is deemed a "professional" by virtue of occupying a "professional" position. Again, his visa is accepted. I distinguish the decision on other grounds.

Both *Hong Kong T.V.* and *Augat Inc. v. Tabor*, 719 F.Supp. 1158 (D.Mass.1989) in which the applicant was the Vice President of the International division of a company making electronic components, are cases were the court rejected the INS' determination that the applicant was not a "member of the professions." The court reviewed the record and found sufficient evidence to conclude both applicants had either enough work experience to overcome the specific degree requirement, or the nature of their positions was sufficiently unique and complex to classify the position as one which requires a "professional."

The precedent value of these cases is limited to their narrow factual situations. Separate from the degree requirement, the uniqueness of the occupation must be judged on a case by case basis. In this case, the standards employed by the INS comply with the applicable law. In reviewing the AAU decision, I acknowledge my duty under *Chevron* and *Utah Power & Light* to show deference to an agency's decision. I am not permitted to substitute my judgment for that of the administrator's when his decision is reasonable.

In this case, however, judicial review is handicapped by the agency's failure to support its decision which refused to recognize the uniqueness and complexity of MacMillan's position with Arctic. MacMillan may well qualify as a "professional," despite his lack of a specialized degree, by virtue of the position he holds at Arctic.

Hence,

IT IS ORDERED defendant's motion for summary judgment is DENIED. The case is remanded to the agency for a hearing to consider whether the beneficiary, MacMillan, is a member of the professions by virtue of the uniqueness and complexity of his position at Arctic.