**Lynn MARTIN, Secretary of Labor, Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Respondent,**

**CF & I Steel Corporation, Intervenor–Respondent.**

**No. 86–2641.**

United States Court of Appeals, Tenth Circuit.

Aug. 5, 1991.

Submitted on the briefs: *

Robert P. Davis, Sol. of Labor, Cynthia L. Attwood, Associate Sol. for Occupational Safety and Health, Ann Rosenthal, for Appellate Litigation and John Shortall, U.S. Dept. of Labor, Washington, D.C., for petitioner.

Randy L. Sego and John D. Faught, John Faught & Associates, Denver, Colo., for intervenor-respondent.

Before MOORE and BALDOCK, Circuit Judges and DAUGHERTY, District Judge.**

BALDOCK, Circuit Judge.

In *Martin v. OSHRC*, —— U.S. ——, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991), the Supreme Court held that a reasonable interpretation of the Secretary of Labor (Secretary) is to be preferred over a reasonable interpretation of the Occupational Safety and Health Review Commission (Commission) when it comes to an ambiguous regulation under the Occupational Safety and Health Act of 1970 (the Act). *Id.*, 111 S.Ct. at 1175, 1179–80. We had held to the contrary. *Dole v. OSHRC*, 891 F.2d 1495, 1499 (10th Cir.1989), *rev'd*, —— U.S. ——, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991). In so holding, we denied the Secretary's petition for review and affirmed a Commission order vacating a citation against intervenor-respondent CF & I. *Id.* at 1496, 1500. The Supreme Court reversed our judgment and remanded for us to consider the reasonableness of the Secretary's interpretation of the regulation at issue, 29 C.F.R. § 1910.1029(g)(3) (1990).[1]

■ CF & I is now in chapter eleven bankruptcy and suggests that "[a]ny claim against CF & I in this matter is a prepetition non-priority claim ... subject to the jurisdiction of the bankruptcy court." While it is abundantly clear that we may not direct enforcement of a money judgment against CF & I, we may review the Commission's order insofar as the Secre-

---

* Upon reversal and remand of our previous judgment, petitioner filed a supplemental brief. Intervenor-respondent filed a letter-response advising of its status in bankruptcy and its decision not to file a supplemental brief. The issues in this case (other than the effect of CF & I's bankruptcy) previously had been briefed by the parties. The parties now have informed the court of their respective positions concerning the bankruptcy.

** The Honorable Frederick A. Daugherty, Senior United States District Judge for the Western District of Oklahoma, sitting by designation.

1. 29 C.F.R. § 1910.1029(g) (1990) provides in pertinent part:

> (3) *Respirator program.* The employer shall institute a respiratory protection program in accordance with § 1910.134 of this part.

tary sought abatement of a safety violation (prospective enforcement) and a monetary penalty. 11 U.S.C. § 362(b)(4) & (5); H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6299;[2] *Brock v. Morysville Body Works, Inc.,* 829 F.2d 383, 388–89 (3d Cir.1987); *Penn Terra Ltd. v. Dep't of Environmental Resources,* 733 F.2d 267, 271–79 (3d Cir.1984). CF & I informs us that it ceased operating the relevant coke ovens in 1984, but we lack any assurance that such operation will not resume. Given that possibility, review is appropriate because worker safety is implicated. And we may review proceedings involving the determination and entry of a monetary penalty because the government's police or regulatory power is involved. *See Edelman v. United States Dep't of Labor,* 923 F.2d 782, 790–91 (10th Cir.1991); *Penn Terra,* 733 F.2d at 267. *See also NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 943 (6th Cir.1986) ("We thus affirm

*entry* of a money judgment, but do not *enforce* that money judgment.") (emphasis in original).

Section 1910.1029(g)(3) incorporates a general regulation concerning respirator use, 29 C.F.R. § 1910.134 (1990). Relying on this general regulation, the Secretary interprets the regulation at issue to require qualitative atmospheric testing to assure that each employee is properly fitted with a respirator. This differs from the Commission's interpretation, which considers § 1910.1029(g)(3) as a training standard,[3] with the employer's regular testing obligation contained in 29 C.F.R. § 1910.-1029(g)(4) (1990).[4] The distinction is relevant because the validity of an administrative citation against CF & I depends upon upholding the Secretary's interpretation, at least insofar as requiring an employer, who has performed atmospheric testing and detected leakage, to institute corrective action to insure proper respirator fit.[5] We

2. The legislative history is clear that the automatic stay provision does not preclude our review of an abatement order or a monetary penalty. Concerning 11 U.S.C. § 362(b),

[p]aragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, when a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6299.

3. As noted, 29 C.F.R. § 1910.1029(g)(3) incorporates 29 C.F.R. § 1910.134 (1990), which includes a discussion of atmospheric testing:

(e) *Use of respirators.*

. . . .

(5) For the safe use of any respirator, it is essential that the user be properly instructed in its selection, use, and maintenance. Both supervisors and workers shall be so instructed by competent persons. Training shall provide the men an opportunity to handle the respirator, have it fitted properly, test its face-piece-

to-face seal, wear it in normal air for a long familiarity period, and finally, to wear it in a test atmosphere.

29 C.F.R. § 1910.134(e)(5).

4. 29 C.F.R. § 1910.1029(g) (1990) provides in pertinent part:

(4) *Respirator usage.* (i) The employer shall assure that the respirator issued to the employee exhibits minimum facepiece leakage and the respirator is fitted properly.

5. CF & I operated a steel plant near Pueblo, Colorado. As part of its steelmaking operation, the company produced coke, a coal derivative, to fuel its blast furnaces. Coke production creates carcinogenic vapors which are dangerous to workers' health. Acting pursuant to the Act, the Secretary promulgated regulations setting the maximum allowable emissions for coke ovens and mandating respirators whenever that level could be exceeded. *See generally* 29 C.F.R. § 1910.1029 (1990). CF & I was required either to abate the hazard by effective engineering controls or to provide respirators to its employees. *See Dole,* 891 F.2d at 1499; *Brock v. City Oil Well Serv. Co.,* 795 F.2d 507, 510 (5th Cir. 1986).

As part of its training program concerning respirator usage, CF & I showed its employees a training film and conducted a positive/negative pressure check. CF & I also conducted what it considered to be optional atmospheric testing, using a "banana oil" test. *See Dole,* 891 F.2d at 1496; *CF & I,* 12 OSHC at 2076–77. Twenty-

must decide whether in these circumstances § 1910.1029(g)(3) may be interpreted reasonably as requiring corrective action.

In our prior opinion, we upheld the Commission's interpretation of the regulation.

> The plain wording of the incorporated § 1910.134(e)(5) prescribes that atmospheric testing is mandated in the "training" of employees. The Commission therefore concluded reasonably that CF & I was not required to utilize ongoing atmospheric testing to insure the proper fit of each employee's respirator.

891 F.2d at 1500. However, we acknowledged "the ambiguous regulatory language contained in 29 C.F.R. § 1910.1029," and concluded that "it is certainly possible to reach an alternate interpretation" than that advanced by the Commission. *Id.*

In deciding this case upon remand, we now focus upon the Secretary's interpretation of the regulation. *Martin,* 111 S.Ct. at 1178. At the same time, we must consider that interpretation in the context of the citation at issue and proceedings below. Given that atmospheric testing occurred at CF & I, we have no occasion to pass on the Secretary's position concerning ongoing atmospheric testing; rather, we consider only whether, having performed atmospheric testing and discovering excess leakage, CF & I was then required to institute corrective action to insure proper respirator fit before allowing the affected employees to return to work.

■ The Secretary's interpretation of an ambiguous regulation may be disregarded only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Martin,* 111 S.Ct. 1180.

In situations in which "the meaning of [regulatory] language is not free from doubt," the reviewing court should give effect to the agency's interpretation so long as it is "reasonable," *Ehlert v. United States,* 402 U.S. 99, 105, 91 S.Ct. 1319, 1323, 28 L.Ed.2d 625 (1971), that is, so long as the interpretation "sensibly conforms to the purpose and wording of the regulations," *Northern Indiana Pub. Serv. Co. v. Porter County Chapter of Izaak Walton League of America, Inc.,* 423 U.S. 12, 15, 96 S.Ct. 172, 174, 46 L.Ed.2d 156 (1975).

*Martin,* 111 S.Ct. at 1176. Thus, we must defer to the Secretary's interpretation on the narrow issue before us if it conforms to the purpose and wording of the regulation. *Id.* at 1176, 1179–80. As part of this reasonableness inquiry, we also may consider whether the Secretary consistently has applied the interpretation in the citation. *Id.* at 1179.

■ The coke oven emissions standard covers respiratory protection in four paragraphs: (g)(1) *General;* (g)(2) *Selection;* (g)(3) *Respirator program;* and (g)(4) *Respirator usage.* Without question, and as the Commission ably recognized, *see CF & I Steel Corp.,* 12 OSHC 2067, 2077–78, the most specific language for this situation is contained in paragraph (g)(4):

> *Respirator usage.* (i) The employer shall assure that the respirator issued to the employee exhibits minimum facepiece leakage and that the respirator is fitted properly.

29 C.F.R. § 1910.1029(g)(4). The Commission viewed this provision as defining *exclusively* an employer's ongoing obligation to assure proper fit of an employee's respirator, while paragraph (g)(3) pertained to training. *CF & I,* 12 OSHC at 2077–78.

eight employees detected the odor of banana oil, "which gave [CF & I] every reason to believe the respirators provided to such employees did not fit properly." ALJ Decision at 24, *reprinted in* Petitioner's Brief at A. 65. CF & I allowed the employees to return to the work environment with the same respirators. Thus, the employees were exposed to coke oven emissions which in all likelihood exceeded the regulatory standard. CF & I was later cited by the Secretary for failing to equip the twenty-eight employees with

properly fitting respirators. The asserted basis for the citation was noncompliance with 29 C.F.R. § 1910.1029(g)(3). The compliance officer acknowledged the applicability of § 1919.-1029(g)(4)(i), however, the citation was not amended. *See CF & I,* 12 OSHC at 2078 n. 13, 2079 n. 15. *See generally R.A. Pohl Constr. Co. v. Marshall,* 640 F.2d 266, 267–68 (10th Cir. 1981) (discussing amendment); *Southern Colo. Prestress Co. v. OSHRC,* 586 F.2d 1342, 1346–48 (10th Cir.1978) (same).

Based upon this view, the Commission concluded that CF & I had an adequate training program within the meaning of paragraph (g)(3). *Id.* at 2079. As we noted in our prior opinion, this is a reasonable interpretation of paragraphs (g)(3) and (g)(4). *Dole,* 891 F.2d at 1500. But it is not the only reasonable interpretation.

Another reasonable interpretation of paragraph (g)(3), with its references to a "respirator program" and "respiratory protection program," is that an employer must, *as part of its program,* take steps to assure the proper fit of respirators including any necessary further inquiry and corrective action when atmospheric testing reveals excessive leakage. This insures that the program will be effective, a concept supported by the plain meaning of the word "program" and 29 C.F.R. § 1910.134,[6] referenced in paragraph (g)(3). "A regulation should be construed to give effect to the natural and plain meaning of its words." *Diamond Roofing v. OSHRC,* 528 F.2d 645, 649 (5th Cir.1976). "Program" is defined as "a plan of action to accomplish a specified end[,]" for example, "a school lunch program." *Random House Dictionary of the English Language* 1546 (2d ed. unabr. 1987). The specified end of the program required by paragraph (g)(3) is "respiratory protection," and any plan of action to achieve this end logically must include provision for corrective action (which may include respirator replacement) when testing confirms excessive leakage. Likewise, § 1910.134(b) generally recognizes, in the context of a respiratory protection program, the need for "continued effectiveness" and respirators which provide "adequate respiratory protection." *See, e.g.,* 29 C.F.R. § 1910.-134(b)(9) & (11).

The Secretary urges us to consider the preamble to § 1910.1029 to ascertain the meaning of § 1910.1029(g)(3). As secondary source of interpretation, we may consult the preamble accompanying a regulatory enactment. *See Colorado v. Idarado Mining Co.,* 916 F.2d 1486, 1496 (10th Cir.1990) (preamble consulted), *cert. denied,* —— U.S. ——, 111 S.Ct. 1584, 113 L.Ed.2d 648 (1991). The preamble which accompanied promulgation discussed the inherent limitations of respirator technology, and mentioned the importance of proper fit to minimize leakage, thus affording workers some protection.[7] However, the preamble does not answer the specific question of whether paragraph (g)(3) or (g)(4) or both speak to a requirement of corrective action to insure proper fit when atmospheric testing coincident to training indicates excess leakage. *Cf. Miller v. Commissioner,* 836 F.2d 1274, 1282 (10th Cir.1988) (use of secondary sources for interpretation of ambiguous enactment depends upon whether source "is sufficiently specific, clear and uniform to be a reliable indicator of intent"). Moreover, we note that the government conceded that the quantitative fit test discussed in the preamble and incorporated in the original version of the regulation "was unsupported" and would not be enforced; thereupon, the provision was vacated by the Third Circuit and deleted by the Secretary. *See American Iron & Steel Inst. v. OSHA,* 577 F.2d 825, 839, 841 (3d Cir.1978), *cert. dismissed,* 448 U.S. 917, 101 S.Ct. 38, 65 L.Ed.2d 1180 (1980); Coke

---

**6.** Section 1910.134 was promulgated at the inception of the Act as a national consensus standard, 29 U.S.C. § 655(a), and is derived from American National Standards Institute (ANSI) standard Z88.2–1969. The ANSI standard, entitled "Practices for Respiratory Protection," was adopted in 1971 and is the source of paragraphs (a)–(f) of § 1910.134. *See* 36 Fed.Reg. 10,466 (May 29, 1971). *See generally, CF & I,* 12 OSHC at 2078.

**7.** In discussing the limitations of respirators, the preamble indicated that "[p]roper facial fit is essential but, due to variations in individual facial dimensions, such fit is difficult to main-

tain." Proposed Regulations–Exposure to Coke Oven Emissions, 41 Fed.Reg. 46,742, 46,773 (Oct. 26, 1976). The preamble further states: "The employer must check to see that employees' respirators fit properly and that leakage is at a minimum." *Id.* at 46,773. The preamble was specific about the consequence of leakage detected by a quantitative test: "If leakage is noted ... it can be concluded that the particular respirator will not protect the worker." *Id.* at 46,774. *Accord* ANSI Z88.2–1969 § 7.5 ("If leakage is still noted, it can be concluded that this particular respirator will not protect the wearer.") (cited in CF & I's brief at 26).

Oven Emissions Standards–Conforming Deletions, 50 Fed.Reg. 37,352–54 (Sept. 13, 1985). *See also CF & I*, 12 OSHC at 2069–70 (discussing demise of quantitative fit regulation) & 2078 nn. 10 & 13 (discussing changes which have occurred subsequent to preamble). Without question, some portions of the preamble relied upon by the Secretary address quantitative fit testing, not qualitative fit testing.

The Secretary consistently has invoked § 1910.134(e)(5) as supporting her interpretation. That section emphasizes instruction, *see Dole*, 891 F.2d at 1499, and contains requirements for training, which "shall provide the men an opportunity to handle the respirator, have it fitted properly, test its face-piece-to-face seal, wear it in normal air for a long familiarity period, and, finally to wear it in a test atmosphere." 29 C.F.R. § 1910.134(e)(5). Although § 1910.134(e)(5) addresses the training phase, the Secretary's position that it also contains a general requirement for proper respirator fit is not without support. Little reason exists for an employee to wear the respirator in a test atmosphere, particularly after having fully familiarized himself with the device (including testing it for comfort), unless the purpose of the *subsequent* test atmosphere opportunity is to test the effectiveness of the fit. The importance of an effective fit whenever the respirator is worn is implicit in § 1910.134(e)(5).[8] If the test indicates that fit is ineffective, the employer must take corrective action; otherwise, the objective of the respiratory protection program would not be achieved. What constitutes an effective fit (minimum facepiece leakage) may be ascertained with ease from a reading of the surrounding regulatory provisions, particularly § 1910.1029(g)(4). *See CTM, Inc. v.*

*OSHRC*, 572 F.2d 262, 263 (10th Cir.1978) (isolated use of word "ineffective" in regulation was not "otherwise defined or elaborated upon" and therefore "a person subject to the regulation can derive no meaningful standard from it").

The Secretary's interpretation of paragraph (g)(3), with its incorporation of § 1910.134, does result in some overlap with the respirator fit requirement contained in paragraph (g)(4); however, this does not render the Secretary's interpretation of paragraph (g)(3) unreasonable. One would expect that many of the requirements for "respirator usage" (paragraph (g)(4)) would be encompassed within a "respirator program" (paragraph (g)(3)). *See Wisconsin Elec. Power v. OSHRC*, 567 F.2d 735, 737 (7th Cir.1977). We conclude that the Secretary's interpretation furthers the remedial purpose of the Act and complements the remedial scheme for minimizing worker exposure to coke oven emissions. *See Whirlpool Corp. v. Marshall*, 445 U.S. 1, 13, 100 S.Ct. 883, 891, 63 L.Ed.2d 154 (1980). We cannot say that the Secretary's interpretation constitutes a clear error in judgment. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983).

In remanding this case, the Supreme Court reminded us that "the Secretary's interpretation is not undeserving of deference merely because the Secretary advances it for the first time in an administrative adjudication." *Martin*, 111 S.Ct. at 1180. The Court cautioned, however, that "the decision to use a citation as the initial means for announcing a particular interpretation may bear on the adequacy of notice to regulated parties."[9] *Id.*

8. *See, e.g.*, 29 C.F.R. § 1910.134(e)(5)(i) (every wearer shall receive fitting instructions, including how to determine if respirator fits properly; respirators shall not be worn in the absence of a good face seal); 29 C.F.R. § 1910.134(e)(5)(ii) (if corrective lenses must be worn as part of the facepiece, facepiece and lenses must be fitted to provide gas-tight seal); 29 C.F.R. § 1910.134(e)(5)(iii) (if corrective spectacles or goggles required, must be worn so as not to affect fit of face-piece).

9. While a rule may have retroactive effects (because the rule affects the utility of past transactions) and still be reasonable a rule may not "change what the law was in the past." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 220, 109 S.Ct. 468, 478, 102 L.Ed.2d 493 (1988) (Scalia, J., concurring). Such a rule could well interfere with reliance interests. *See NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 295, 94 S.Ct. 1757, 1772, 40 L.Ed.2d 134 (1974).

■ On this score, CF & I raises a due process challenge to the Secretary's interpretation based upon the vagueness of the regulation. CF & I relies upon cases finding due process violations when citations were plainly beyond the words in a regulation. *See, e.g., Borton, Inc. v. OSHRC,* 734 F.2d 508, 510 (10th Cir.1984); *Dravo Corp. v. OSHRC,* 613 F.2d 1227, 1234 (3d Cir.1980); *Kent Nowlin Constr. Co. v. OSHA,* 593 F.2d 368, 370–71 (10th Cir. 1979); *Usery v. Kennecott Copper Corp.,* 577 F.2d 1113, 1118–19 (10th Cir.1977); *Diamond Roofing,* 528 F.2d at 648–49. In this circuit, the Secretary's regulation when challenged for vagueness must be viewed in the light of the conduct to which it is applied. *Austin Bldg. Co. v. OSHRC,* 647 F.2d 1063, 1066 (10th Cir.1981); *Jensen Constr. Co. v. OSHRC,* 597 F.2d 246, 248–49 (10th Cir.1979); *Brennan v. OSHRC,* 505 F.2d 869, 872–73 (10th Cir.1974). Recognizing that, we agree with CF & I that the Secretary should not be permitted to rely on her "purpose of the Act" and "common sense" arguments to require what may have been intended but is not clearly stated in paragraph (g)(3). *See Kennecott Copper,* 577 F.2d at 1119; *Diamond Roofing,* 528 F.2d at 649. An employer should not have to guess at what the Secretary intended. *Kent Nowlin,* 593 F.2d at 371. And we recognize that the compliance officer, the ALJ, the Commission and this court have arrived at fundamentally different interpretations of the scope and requirements of paragraphs (g)(3) and (g)(4) of the regulation. *Id.* at 371; *Diamond Roofing,* 528 F.2d at 649.

■ To resolve the due process issue, however, it is not necessary to pass on the reasonableness of the Secretary's position concerning ongoing atmospheric testing. Instead, our resolution turns on whether CF & I had fair notice of the Secretary's reasonable, though perhaps not apparent, interpretation that a respirator program requires corrective action when qualitative testing indicates excess leakage.

■ The ALJ found that "the requirements of the standard were explained to [CF & I] long in advance of the inspection by the compliance officer." ALJ Decision & Order at 26, *reprinted in* Petitioner's Brief at A.67. In 1977, CF & I was cited for numerous violations of the coke oven emissions standard, including lack of compliance with the respiratory protection program provision, 29 C.F.R. § 1910.-1029(g)(3). The parties entered into a settlement agreement approved by the Commission in 1979. *CF & I,* 12 OSHC at 2070. Standing alone, a settlement agreement does not necessarily establish knowledge. *Department of Labor v. OSHRC,* 938 F.2d 1116, 1117–1118 (10th Cir.1991). But an OSHA compliance officer indicated

> that at the settlement conference that followed his 1977 inspection, he told CF & I that respirators should be fitted in banana oil or irritant smoke. He testified that the training film shown to newly hired CF & I employees stated that *if an employee detected the presence of banana oil, a new respirator would be supplied.*

*CF & I,* 12 OSHC at 2077 (emphasis supplied). We have carefully reviewed the testimony relied upon by the ALJ, and discussed by the Commission, to the effect that (1) CF & I was advised of the Secretary's interpretation of respiratory program requirements prior to the present citation, and (2) the CF & I training film indicated an employee would receive a different respirator in the event the atmospheric testing indicated excess leakage. *See* IV R. 85–86; 109–17. These findings are supported by substantial evidence in the record as a whole, *see CCI, Inc. v. OSHA,* 688 F.2d 88, 89 (10th Cir.1982), and plainly indicate that CF & I had actual notice of the Secretary's interpretation of the programmatic requirements of § 1910.-1029(g)(3), including proper respirator fit. *See, e.g.,* IV R. 112–13. CF & I's advance notice of the Secretary's interpretation is fatal to its due process claim because CF & I lacks standing to challenge the regulation on behalf of others without notice. *See Warth v. Seldin,* 422 U.S. 490, 499–500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *Austin Bldg.,* 647 F.2d at 1066 (in a void for vagueness challenge, language of safety regulation will not be applied to hypo-

thetical fact situations); *Diebold, Inc. v. Marshall*, 585 F.2d 1327, 1337 (6th Cir. 1978) ("Certainly, if Diebold had been aware of the guarding requirement, it would have received a constitutionally sufficient warning and could have no complaint on that score.").

Given the Secretary's interpretation of the regulation, the operative facts as determined by the ALJ and discussed by the Commission admit of but one conclusion—a violation of § 1910.1029(g)(3). To establish a violation, the Secretary was required to show that (1) the cited standard applied, (2) the employer did not comply with the standard, and (3) the employees had access to the hazard. *Advance Bronze, Inc. v. Dole*, 917 F.2d 944, 951 (6th Cir.1990); *Quality Stamping Prods. v. OSHRC*, 709 F.2d 1093, 1099 (6th Cir.1983). Twenty-eight CF & I employees detected the smell of banana oil and therefore detected facepiece leakage. *CF & I*, 12 OSHC at 2079; *id.* at 2081 (Wall, Comm'r, dissenting); ALJ decision at 24–25, *reprinted in* Petitioner's Brief at A. 65. CF & I's respiratory protection program failed to take any corrective action to assure proper respirator fit. *CF & I*, 12 OSHC at 2077; *id.* at 2081 (Wall, Comm'r, dissenting); ALJ decision at 26, *reprinted in* Petitioner's Brief at A. 67. The twenty-eight employees then returned to the work environment with respirators which did not minimize leakage of the carcinogenic vapors. No one suggests that such exposure is not harmful. *See American Iron & Steel Inst.*, 577 F.2d at 831–32. We reject CF & I's contention that a remand is required to determine if it violated the regulation as interpreted by the Secretary.

We reach a different result with respect to the willfulness determination. The ALJ determined that the CF & I's violation was willful and imposed the maximum penalty. 29 U.S.C. § 666(a). The Commission did not address this issue in its decision because it vacated the cita-

tion on other grounds. The Secretary urges us to affirm the ALJ's determination on this point, arguing that on this record only one factual determination is possible. A violation is willful "if done knowingly and purposely by an employer who, having a free will or choice, either intentionally disregards the standard or is plainly indifferent to its requirement. An omission or failure to act is willfully done if done voluntarily and intentionally." *Kent Nowlin Constr.*, 593 F.2d at 372. *Accord Havens Steel Co. v. OSHRC*, 738 F.2d 397, 401 (10th Cir.1984). The Secretary contends that the violation must be characterized as willful because CF & I (1) had adopted a written program, pursuant to a settlement agreement, requiring replacement of the improperly fitted respirators, and (2) allowed twenty-eight workers to return to work when atmospheric testing indicated excess leakage. On the other hand, CF & I contends that the ambiguity concerning the application of paragraph (g)(3) must be considered along with its good faith attempts to institute a respirator program. In view of the subsequent proceedings in this case, the controverted nature of the willfulness determination, and the discretion vested in Commission with respect to the amount of the penalty, *see* 29 U.S.C. § 666(j), it is advisable to remand this issue to the Commission.[10] *Brennan v. OSHRC*, 502 F.2d 946, 953 (3d Cir.1974). *See also Daniel Int'l Corp.*, 705 F.2d 382, 387 (10th Cir. 1983) (review of Commission's willfulness determination).

The Secretary's petition for review is GRANTED and the Commission's order is VACATED with respect to the pertinent citation (citation 2, *see CF & I*, 12 OSHC at 2081), and the case is REMANDED to the Commission for further consideration consistent with this opinion.

---

**10.** In remanding, we recognize that "the basic rule in these regulatory cases is that the regulated business must 'follow the law even if it has a good faith belief that its own policy is wiser.'" *Hackney, Inc. v. McLaughlin*, 895 F.2d 1298, 1300 (10th Cir.1990) (quoting *RSR Corp. v.* *Brock*, 764 F.2d 355, 363 (5th Cir.1985)). An employer may not simply substitute its judgment for that of OSHA; the employer must follow what it knows to be the law despite its subjective belief that an agency interpretation is invalid. *See RSR Corp.*, 764 F.2d at 363.