MARTIN, SECRETARY OF LABOR *v.* OCCUPATIONAL
SAFETY AND HEALTH REVIEW COMMISSION ET AL.

No. 89–1541.   Argued November 27, 1990—Decided March 20, 1991

MARSHALL, J., delivered the opinion for a unanimous Court.

*Clifford M. Sloan* argued the cause for petitioner. With him on the briefs were *Solicitor General Starr, Deputy Solicitor General Shapiro, Allen H. Feldman,* and *Mark S. Flynn.*

*John D. Faught* argued the cause for respondent CF&I Steel Corp. With him on the brief were *Randy L. Sego* and *Michael W. Coriden.*\*

JUSTICE MARSHALL delivered the opinion of the Court.

In this case, we consider the question to whom should a reviewing court defer when the Secretary of Labor and the Occupational Safety and Health Review Commission furnish reasonable but conflicting interpretations of an ambiguous regulation promulgated by the Secretary under the Occupational Safety and Health Act of 1970, 84 Stat. 1590, as amended, 29 U. S. C. § 651 *et seq.* The Court of Appeals

---

\**George H. Cohen, Jeremiah A. Collins,* and *Laurence Gold* filed a brief for the American Federation of Labor and Congress of Industrial Organizations as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for nominal respondent Occupational Safety and Health Review Commission by *Robert C. Gombar, Glen D. Nager,* and *Earl R. Ohman, Jr.;* for the American Iron and Steel Institute by *Albert J. Beveridge III* and *Barton C. Green;* for the Chamber of Commerce of the United States of America et al. by *Stephen A. Bokat* and *Robin S. Conrad;* and for the National Association of Manufacturers et al. by *W. Scott Railton, Jan S. Amundson, Quentin Riegel,* and *William H. Crabtree.*

concluded that it should defer to the Commission's interpretation under such circumstances. We reverse.

## I

## A

The Occupational Safety and Health Act of 1970 (OSH Act or Act) establishes a comprehensive regulatory scheme designed "to assure so far as possible . . . safe and healthful working conditions" for "every working man and woman in the Nation." 29 U. S. C. § 651(b). See generally *Atlas Roofing Co.* v. *Occupational Safety and Health Review Comm'n*, 430 U. S. 442, 444–445 (1977). To achieve this objective, the Act assigns distinct regulatory tasks to two different administrative actors: the Secretary of Labor (Secretary); and the Occupational Safety and Health Review Commission (Commission), a three-member board appointed by the President with the advice and consent of the Senate. 29 U. S. C. §§ 651(b)(3), 661.

The Act charges the Secretary with responsibility for setting and enforcing workplace health and safety standards. See *Cuyahoga Valley R. Co.* v. *United Transportation Union*, 474 U. S. 3, 6–7 (1985) *(per curiam)*. The Secretary establishes these standards through the exercise of rulemaking powers. See 29 U. S. C. § 665. If the Secretary (or the Secretary's designate) determines upon investigation that an employer is failing to comply with such a standard, the Secretary is authorized to issue a citation and to assess the employer a monetary penalty. §§ 658–659, 666.[1]

The Commission is assigned to "carr[y] out adjudicatory functions" under the Act. § 651(b)(3). If an employer

---

[1] The Secretary has delegated certain statutory responsibilities to the Assistant Secretary for Occupational Safety and Health, who heads the Occupational Safety and Health Administration. See Secretary of Labor's Order No. 12–71, 36 Fed. Reg. 8754 (1971); Order No. 8–76, 41 Fed. Reg. 25059 (1976); Order No. 9–83, 48 Fed. Reg. 35736 (1983).

wishes to contest a citation, the Commission must afford the employer an evidentiary hearing and "thereafter issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty." § 659(c). Initial decisions are made by an administrative law judge (ALJ), whose ruling becomes the order of the Commission unless the Commission grants discretionary review. § 661(j). Both the employer and the Secretary have the right to seek review of an adverse Commission order in the court of appeals, which must treat as "conclusive" Commission findings of fact that are "supported by substantial evidence." § 660(a)–(b).

B

This case arises from the Secretary's effort to enforce compliance with OSH Act standards relating to coke-oven emissions. Promulgated pursuant to the Secretary's rulemaking powers, these standards establish maximum permissible emissions levels and require the use of employee respirators in certain circumstances. See 29 CFR § 1910.1029 (1990). An investigation by one of the Secretary's compliance officers revealed that respondent CF&I Steel Corporation (CF&I) had equipped 28 of its employees with respirators that failed an "atmospheric test" designed to determine whether a respirator provides a sufficiently tight fit to protect its wearer from carcinogenic emissions. As a result of being equipped with these loose-fitting respirators, some employees were exposed to coke-oven emissions exceeding the regulatory limit. Based on these findings, the compliance officer issued a citation to CF&I and assessed it a $10,000 penalty for violating 29 CFR § 1910.1029(g)(3) (1990), which requires an employer to "institute a respiratory protection program in accordance with § 1910.134." CF&I contested the citation.

The ALJ sided with the Secretary, but the full Commission subsequently granted review and vacated the citation. See *CF&I*, 12 OSHC 2067 (1986). In the Commission's view, the "respiratory protection program" referred to in

§ 1910.1029(g)(3) expressly requires only that an employer train employees in the proper use of respirators;[2] the obligation to assure proper fit of an individual employee's respirator, the Commission noted, was expressly stated in another regulation, namely, § 1910.1029(g)(4)(i).[3]   See 12 OSHC, at 2077–2078.   Reasoning, *inter alia,* that the Secretary's interpretation of § 1910.1029(g)(3) would render § 1910.1029 (g)(4) superfluous, the Commission concluded that the facts alleged in the citation and found by the ALJ did not establish a violation of § 1910.1029(g)(3).   See 12 OSHC, at 2078–2079. Because § 1910.1029(g)(3) was the only asserted basis for liability, the Commission vacated the citation.   See *id.,* at 2079.

The Secretary petitioned for review in the Court of Appeals for the Tenth Circuit, which affirmed the Commission's order.   See *Dole* v. *Occupational Safety and Health Review Commission,* 891 F. 2d 1495 (1989).   The court concluded that the relevant regulations were ambiguous as to the employer's obligation to assure proper fit of an employee's respirator.   The court thus framed the issue before it as *whose* reasonable interpretation of the regulations, the Secretary's or the Commission's, merited the court's deference.   See *id.,* at 1497.   The court held that the Commission's interpreta-

---

[2] "For safe use of any respirator, it is essential that the user be properly instructed in its selection, use, and maintenance.   Both supervisors and workers shall be so instructed by competent persons.   Training shall provide the men an opportunity to handle the respirator, have it fitted properly, test its face-piece-to-face seal, wear it in normal air for a long familiarity period, and, finally, to wear it in a test atmosphere."   29 CFR § 1910.134(e)(5) (1990).

[3] This regulation states in pertinent part: "*Respirator usage.* (i) The employer shall assure that the respirator issued to the employee exhibits minimum facepiece leakage and that the respirator is fitted properly." § 1910.1029.   According to the Commission, the compliance officer who issued the citation "acknowledged that [§ 1910.1029(g)(4)(i)] applied," and "that he might have cited the wrong standard."   *CF&I,* 12 OSHC 2067, 2078 (1986).

tion was entitled to deference under such circumstances, reasoning that Congress had intended to delegate to the Commission "the normal complement of adjudicative · powers possessed by traditional administrative agencies" and that "[s]uch an adjudicative function necessarily encompasses the power to 'declare' the law." *Id.*, at 1498. Although the court determined that it would "certainly [be] possible to reach an alternate interpretation of the ambiguous regulatory language," the court nonetheless concluded that the Commission's interpretation was a reasonable one. *Id.*, at 1500. The court therefore deferred to the Commission's interpretation without assessing the reasonableness of the Secretary's competing view. See *ibid.*

The Secretary thereafter petitioned this Court for a writ of certiorari. We granted the petition in order to resolve a conflict among the Circuits on the question whether a reviewing court should defer to the Secretary or to the Commission when these actors furnish reasonable but conflicting interpretations of an ambiguous regulation under the OSH Act.[4] 497 U. S. 1002 (1990).

## II

It is well established "that an agency's construction of its own regulations is entitled to substantial deference." *Lyng* v. *Payne*, 476 U. S. 926, 939 (1986); accord, *Udall* v. *Tallman*, 380 U. S. 1, 16–17 (1965). In situations in which "the meaning of [regulatory] language is not free from doubt," the reviewing court should give effect to the agency's interpretation so long as it is "reasonable," *Ehlert* v. *United States*, 402

---

[4] Compare *Brock* v. *Williams Enterprises of Georgia, Inc.*, 832 F. 2d 567, 569–570 (CA11 1987) (deference to Secretary); *United Steelworkers of America* v. *Schuylkill Metals Corp.*, 828 F. 2d 314, 319 (CA5 1987) (same); and *Donovan* v. *A. Amorello & Sons, Inc.*, 761 F. 2d 61, 65–66 (CA1 1985) (same), with *Brock* v. *Cardinal Industries, Inc.*, 828 F. 2d 373, 376, n. 4 (CA6 1987) (deference to Commission); *Brock* v. *Bechtel Power Corp.*, 803 F. 2d 999, 1000–1001 (CA9 1986) (same); and *Marshall* v. *Western Electric, Inc.*, 565 F. 2d 240, 244 (CA2 1977) (same).

U. S. 99, 105 (1971), that is, so long as the interpretation "sensibly conforms to the purpose and wording of the regulations," *Northern Indiana Pub. Serv. Co.* v. *Porter County Chapter of Izaak Walton League of America, Inc.*, 423 U. S. 12, 15 (1975). Because applying an agency's regulation to complex or changing circumstances calls upon the agency's unique expertise and policymaking prerogatives, we presume that the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers. See *Ford Motor Credit Co.* v. *Milhollin*, 444 U. S. 555, 566, 568 (1980). The question before us in this case is to which administrative actor—the Secretary or the Commission—did Congress delegate this "interpretive" lawmaking power under the OSH Act.[5]

To put this question in perspective, it is necessary to take account of the unusual regulatory structure established by the Act. Under most regulatory schemes, rulemaking, enforcement, and adjudicative powers are combined in a single administrative authority. See, *e. g.*, 15 U. S. C. §41 *et seq.* (Federal Trade Commission); 15 U. S. C. §§77s–77u (Securities and Exchange Commission); 47 U. S. C. §151 *et seq.* (Federal Communications Commission). Under the OSH Act, however, Congress separated enforcement and rulemaking powers from adjudicative powers, assigning these respective functions to two *different* administrative authorities. The purpose of this "split enforcement" structure was to achieve a greater separation of functions than exists within the traditional "unitary" agency, which under the Administrative Procedure Act (APA) generally must divide enforcement and adjudication between separate personnel, see 5 U. S. C. §554(d). See generally Johnson, The Split-Enforcement Model: Some Conclusions from the OSHA and MSHA Experiences, 39 Admin. L. Rev. 315, 317–319 (1987).

---

[5] The parties do not challenge the Court of Appeals' conclusion that the regulations at issue in this case are ambiguous. We assume that this conclusion is correct for purposes of our analysis.

This is not the first time that we have been called upon to resolve an OSH Act "jurisdictional" dispute between the Secretary and the Commission. See *Cuyahoga Valley R. Co.* v. *United Transportation Union*, 474 U. S., at 3. At issue in *Cuyahoga Valley* was whether the Commission could conduct an administrative adjudication notwithstanding the Secretary's motion to vacate the citation. We held that the Commission had no such power. We noted that "enforcement of the Act is the sole responsibility of the Secretary" and concluded that "[a] necessary adjunct of that power is the authority to withdraw a citation and enter into settlement discussions with the employer." *Id.,* at 6–7. The Commission's role as "neutral arbiter," we explained, "plainly does not extend to overturning the Secretary's decision not to issue or to withdraw a citation." *Id.,* at 7.

Although the Act does not expressly address the issue, we now infer from the structure and history of the statute, see *id.,* at 6–7, that the power to render authoritative interpretations of OSH Act regulations is a "necessary adjunct" of the Secretary's powers to promulgate and to enforce national health and safety standards. The Secretary enjoys readily identifiable structural advantages over the Commission in rendering authoritative interpretations of OSH Act regulations. Because the Secretary promulgates these standards, the Secretary is in a better position than is the Commission to reconstruct the purpose of the regulations in question. Moreover, by virtue of the Secretary's statutory role as enforcer, the Secretary comes into contact with a much greater number of regulatory problems than does the Commission, which encounters only those regulatory episodes resulting in contested citations. Cf. Note, Employee Participation in Occupational Safety and Health Review Commission Proceedings, 85 Colum. L. Rev. 1317, 1331, and n. 90 (1985) (reporting small percentage of OSH Act citations contested between 1979 and 1985). Consequently, the Secretary is more likely to develop the expertise relevant to assessing the ef-

fect of a particular regulatory interpretation. Because historical familiarity and policymaking expertise account in the first instance for the presumption that Congress delegates interpretive lawmaking power to the agency rather than to the reviewing court, see, *e. g.*, *Mullins Coal Co.* v. *Director, Office of Workers' Compensation Programs*, 484 U. S. 135, 159 (1987); *Ford Motor Credit Co.* v. *Milhollin, supra,* at 566; *INS* v. *Stanisic*, 395 U. S. 62, 72 (1969), we presume here that Congress intended to invest interpretive power in the administrative actor in the best position to develop these attributes.

The legislative history of the OSH Act supports this conclusion. The version of the Act originally passed by the House of Representatives vested adjudicatory power in the Commission and rulemaking power in an independent standards board, leaving the Secretary with only enforcement power. 116 Cong. Rec. 38716 (1970), reprinted in Legislative History of the Occupational Safety and Health Act of 1970 (S. 2193, Pub. L. 91–596) (Committee Print prepared by the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare), pp. 1094–1096 (1971) (Legislative History). The Senate version dispensed with the standards board and established the division of responsibilities that survives in the enacted legislation. The Senate Committee Report explained that combining legislative and enforcement powers in the Secretary would result in "a sounder program" because it would make a single administrative actor responsible both for "formulat[ing] rules . . . and for seeing that they are workable and effective in their day-to-day application," and would allow Congress to hold a single administrative actor politically "accountable for the overall implementation of that program." S. Rep. No. 91–1282, p. 8 (1970), reprinted in Legislative History 148. Because dividing the power to promulgate and enforce OSH Act standards from the power to make law by interpreting them would make *two* administrative actors ultimately responsible for implement-

ing the Act's policy objectives, we conclude that Congress did not expect the Commission to possess authoritative interpretive powers.

For the same reason, we reject the Court of Appeals' inference that Congress intended "to endow the Commission with the normal complement of adjudicative powers possessed by *traditional* administrative agencies." 891 F. 2d, at 1498 (emphasis added). Within traditional agencies—that is, agencies possessing a *unitary* structure—adjudication operates as an appropriate mechanism not only for factfinding, but also for the exercise of delegated lawmaking powers, including lawmaking by interpretation. See *NLRB* v. *Bell Aerospace Co.*, 416 U. S. 267, 292–294 (1974); *SEC* v. *Chenery Corp.*, 332 U. S. 194, 201–203 (1947). But in these cases, we concluded that agency adjudication is a generally permissible mode of lawmaking and policymaking only because the unitary agencies in question also had been delegated the power to make law and policy through rulemaking. See *Bell Aerospace, supra,* at 292–294; *Chenery Corp., supra,* at 202–203. See generally Shapiro, The Choice of Rulemaking or Adjudication in the Development of Administrative Policy, 78 Harv. L. Rev. 921 (1965). Insofar as Congress did not invest the Commission with the power to make law or policy by other means, we cannot infer that Congress expected the Commission to use *its* adjudicatory power to play a policymaking role. Moreover, when a traditional, unitary agency uses adjudication to engage in lawmaking by regulatory interpretation, it necessarily interprets regulations that *it* has promulgated. This, too, cannot be said of the Commission's power to adjudicate.

Consequently, we think the more plausible inference is that Congress intended to delegate to the Commission the type of nonpolicymaking adjudicatory powers typically exercised by a *court* in the agency-review context. Under this conception of adjudication, the Commission is authorized to review the Secretary's interpretations only for consistency

with the regulatory language and for reasonableness. In addition, of course, Congress expressly charged the Commission with making authoritative findings of fact and with applying the Secretary's standards to those facts in making a decision. See 29 U. S. C. § 660(a) (Commission's factual findings "shall be conclusive" so long as "supported by substantial evidence"). The Commission need be viewed as possessing no more power than this in order to perform its statutory role as "neutral arbiter." See *Cuyahoga Valley*, 474 U. S., at 7.

CF&I draws a different conclusion from the history and structure of the Act. Congress, CF&I notes, established the Commission in response to concerns that combining rulemaking, enforcement, and adjudicatory power in the Secretary would leave employers unprotected from regulatory bias. Construing the Act to separate enforcement and interpretive powers is consistent with this purpose, CF&I argues, because it protects regulated employers from biased prosecutorial interpretations of the Secretary's regulations. Indeed, interpretations furnished in the course of administrative penalty actions, according to CF&I, are mere "litigating positions," undeserving of judicial deference under our precedents. See, *e. g., Bowen* v. *Georgetown Univ. Hospital*, 488 U. S. 204, 212 (1988).

Although we find these concerns to be important, we think that they are overstated. It is clear that Congress adopted the split-enforcement structure in the OSH Act in order to achieve a greater separation of functions than exists in a conventional unitary agency. See S. Rep. No. 91–1282, *supra*, at 56, reprinted in Legislative History 195 (individual views of Sen. Javits) (noting that adjudication by independent panel goes beyond division of functions under the APA but defending split-enforcement structure as "more closely [in] accor[d] with traditional notions of due process"). But the conclusion that the Act should therefore be understood to separate enforcement powers from authoritative interpretive powers

begs the question just *how much* Congress intended to depart from the unitary model. Sponsors of the Commission purported to be responding to the traditional objection that an agency head's participation in or supervision of agency investigations results in biased review of the decisions of the hearing officer, notwithstanding internal separations within the agency. See *ibid.* See generally 3 K. Davis, Administrative Law Treatise § 18.8, pp. 369–370 (2d ed. 1980). Vesting authoritative factfinding and ALJ-review powers in the Commission, an administrative body wholly independent of the administrative enforcer, dispels this concern.

We harbor no doubt that Congress also intended to protect regulated parties from biased interpretations of the Secretary's regulations. But this objective is achieved when the Commission, and ultimately the court of appeals, review the Secretary's interpretation to assure that it is consistent with the regulatory language and is otherwise *reasonable.* Giving the Commission the power to substitute *its* reasonable interpretations for the Secretary's might slightly increase regulated parties' protection from overzealous interpretations. But it would also clearly frustrate Congress' intent to make a single administrative actor "accountable for the overall implementation" of the Act's policy objectives by combining legislative and enforcement powers in the Secretary. S. Rep. No. 91–1282, p. 8, reprinted in Legislative History 148.

We are likewise unpersuaded by the contention that the Secretary's interpretations of regulations will necessarily appear in forms undeserving of judicial deference. Our decisions indicate that agency "litigating positions" are not entitled to deference when they are merely appellate counsel's *"post hoc* rationalizations" for agency action, advanced for the first time in the reviewing court. See *Bowen* v. *Georgetown Univ. Hospital, supra,* at 212; *Burlington Truck Lines, Inc.* v. *United States,* 371 U. S. 156, 168 (1962). Because statutory and regulatory interpretations furnished in this setting occur *after* agency proceedings have terminated, they do not

constitute an exercise of the agency's delegated lawmaking powers. The Secretary's interpretation of OSH Act regulations in an administrative adjudication, however, *is* agency action, not a *post hoc* rationalization of it. Moreover, when embodied in a citation, the Secretary's interpretation assumes a form expressly provided for by Congress. See 29 U. S. C. § 658. Under these circumstances, the Secretary's litigating position before the Commission is as much an exercise of delegated lawmaking powers as is the Secretary's promulgation of a workplace health and safety standard.

In addition, the Secretary regularly employs less formal means of interpreting regulations prior to issuing a citation. These include the promulgation of interpretive rules, see, *e. g., Marshall* v. *W and W Steel Co.*, 604 F. 2d 1322, 1325–1326 (CA10 1979); cf. *Whirlpool Corp.* v. *Marshall*, 445 U. S. 1, 11 (1980), and the publication of agency enforcement guidelines, see United States Department of Labor, OSHA Field Operations Manual (3d ed. 1989). See generally S. Bokat & H. Thompson, Occupational Safety and Health Law 658–660 (1988). Although not entitled to the same deference as norms that derive from the exercise of the Secretary's delegated lawmaking powers, these informal interpretations are still entitled to some weight on judicial review. See *Batterton* v. *Francis*, 432 U. S. 416, 425–426, and n. 9 (1977); *Skidmore* v. *Swift & Co.*, 323 U. S. 134, 140 (1944); *Whirlpool, supra,* at 11. A reviewing court may certainly consult them to determine whether the Secretary has consistently applied the interpretation embodied in the citation, a factor bearing on the reasonableness of the Secretary's position. See *Ehlert* v. *United States*, 402 U. S., at 105.

### III

We emphasize the narrowness of our holding. We deal in this case only with the division of powers between the Secretary and the Commission under the OSH Act. We conclude from the available indicia of legislative intent that Congress

did not intend to sever the power authoritatively to interpret OSH Act regulations from the Secretary's power to promulgate and enforce them. Subject only to constitutional limits, Congress is free, of course, to divide these powers as it chooses, and we take no position on the division of enforcement and interpretive powers within other regulatory schemes that conform to the split-enforcement structure. Nor should anything we say today be understood to bear on whether particular divisions of enforcement and adjudicative power within a unitary agency comport with § 554(d) of the APA.

In addition, although we hold that a reviewing court may not prefer the reasonable interpretations of the Commission to the reasonable interpretations of the Secretary, we emphasize that the reviewing court should defer to the Secretary only if the Secretary's interpretation *is* reasonable. The Secretary's interpretation of an ambiguous regulation is subject to the same standard of substantive review as any other exercise of delegated lawmaking power. See 5 U. S. C. § 706(2)(A); *Batterton* v. *Francis, supra,* at 426. As we have indicated, the Secretary's interpretation is not undeserving of deference merely because the Secretary advances it for the first time in an administrative adjudication. But as the Secretary's counsel conceded in oral argument, Tr. of Oral Arg. 18–19, 20–21, the decision to use a citation as the initial means for announcing a particular interpretation may bear on the adequacy of notice to regulated parties, see *Bell Aerospace,* 416 U. S., at 295; *Bowen* v. *Georgetown Univ. Hospital,* 488 U. S., at 220 (SCALIA, J., concurring), on the quality of the Secretary's elaboration of pertinent policy considerations, see *Motor Vehicle Mfrs. Assn. of United States, Inc.* v. *State Farm Mut. Automobile Ins. Co.,* 463 U. S. 29, 43 (1983), and on other factors relevant to the reasonableness of the Secretary's exercise of delegated lawmaking powers.

CF&I urges us to hold that the Secretary unreasonably interpreted 29 CFR § 1910.1029(g)(3) (1990) in this case. However, because the Court of Appeals deferred to the Commission's interpretation, it had no occasion to address the reasonableness of the Secretary's interpretation. Rather than consider this issue for the first time ourselves, we leave the issue for resolution on remand.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*