85 F.3d 632
 17 O.S.H. Cas. (BNA) 1633
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
ROBERTS PIPELINE CONSTRUCTION, INC., Petitioner,
v.
SECRETARY OF LABOR and Occupational Safety & Health
Administration, Respondents.
 No. 94-3726.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 2, 1995.
Decided May 2, 1996.
 
 Before BAUER, COFFEY and MANION, Circuit Judges.
 
 ORDER
 
 1
 Roberts Pipeline Construction, Inc., ("Roberts"), appeals from a decision of the Occupational Health and Safety Review Commission ("Commission") to affirm the award of $30,800 in penalties. Roberts claims that the Commission abused its discretion. We affirm.
 
 
 2
 On May 22, 1991, an OSHA inspector spotted an open trench that one of Roberts' work crew had dug to insert a T-section into a gas pipeline. The trench was eight feet long, eight and a half feet wide, and seven feet deep at its lowest point, with a smaller adjoining side trench that was five feet long, two and a half feet wide and four feet deep. The inspector observed that no shoring system had been used to protect against cave-ins. Shoring was a particular concern because the soil was the least stable type. After examining the worksite, the inspector issued a citation for a willful failure to provide shoring or equivalent protection, 29 C.F.R. § 1926.651(a)(1). The Secretary of Labor ("Secretary") later proposed a non-willful serious violation of the regulation in the alternative. The OSHA inspector also issued a second citation for seven other serious violations relating to training, safety precautions and equipment violations.[1] The serious nature of the violations made a penalty mandatory. 29 U.S.C. § 666(b).
 
 
 3
 Roberts contested the Secretary's proposed sanctions. An ALJ for the Commissioner evaluated the evidence in light of the four factors contained in 29 U.S.C. § 666(j): the gravity of violation, the size of employer's business, the employer's prior safety history and the employer's good faith. The first factor, gravity, is deemed to be the most important. The ALJ found that all eight violations were serious. Despite the Secretary's finding to the contrary, the ALJ noted that Roberts had demonstrated good faith during and after the inspection. The ALJ awarded amounts equal to the Secretary's proposed penalties.
 
 
 4
 The Commission granted Roberts' petition for discretionary review. Roberts generally asserted that the ALJ had committed an "abuse of discretion" by failing to give due consideration to the § 666(j) factors. In a split decision, the Commission affirmed the ALJ's assessments. The majority held that the ALJ had considered the evidence and all of the statutory factors. The third commissioner, Commissioner Edwin G. Foulke, concurring in part and dissenting in part, concluded that the acetylene tank and ground pin violations were less grave than the ALJ found.
 
 
 5
 Roberts contends that if the Commission had made a proper de novo review of the record in light of the § 666(j) factors, the penalties would have been substantially lower.[2] When the Commission decides not to let the ALJ's determination stand as its decision, it conducts a de novo review of the judge's assessed penalties. Secretary of Labor v. Quality Stamping Products Co., 16 O.S.H.C. 1927, 1027 (OSHRC 1994). In turn, we review the Commission's assessment of penalties for an abuse of discretion. Zemon Concrete Corp. v. Occupational Safety & Health Rev. Comm'n, 683 F.2d 176, 181 (7th Cir.1982). The Commission's factual findings are conclusive to the extent that they are supported by substantial evidence. Martin v. Occupational Safety & Health Rev. Comm'n, 499 U.S. 144, 148 (1991). Although a reviewing court should give some weight to the Secretary's mathematical formula for assessing penalties when deciding whether the Commission has abused its discretion, the Commission is not conclusively bound to the specific percentages assigned under the Secretary's guidelines. See id. at 157 (holding that guidelines are not entitled to same deference as norms that derive from Secretary's formal legislative powers, but still are entitled to some weight); Secretary of Labor v. Hern Iron Works, Inc., 16 O.S.H.C. 1619, 1621-22 (OSHRC 1994); cf. also Zemon Concrete Corp., 683 F.2d at 181 n. 16 (describing standard 20% reduction for good faith as an "upper limit" on reduction allowed). Therefore, the Commission may arrive at penalties equal in size to the Secretary's proposed penalties even if its factual findings differ somewhat.
 
 
 6
 Roberts' argument on appeal consists of pointing to mitigating evidence in the record. First, it claims that various underground structures stabilized the trench walls: a pipe running along the western wall, another pipe along the south wall, a storm drain behind the east wall and three foot deep curbstones hidden behind the north wall. However, the ALJ focussed on the low cohesiveness of the soil. Substantial evidence in the record supports this position. The OSHA inspector testified that regardless of the presence or absence of pipes, the instability of the soil was the primary concern. Second, Roberts stresses that the top of the gas pipeline was only three feet under ground, a point on which estimates vary. However, the ALJ found that the trench was seven feet deep at its deepest point, the cleared space below the gas pipeline. Helmets, shoring and a ladder for escape were therefore important. (Although perhaps the trench had been shored at the time, we note, as did ALJ, that the foreman had worked six hours the day before the inspection lying at the bottom of the trench.) Third, Roberts stresses that the sides of the pit were not perfectly vertical. However, they were not sloped sufficiently to independently meet OSHA's safety requirements, and photographs in the record show that they were actually fairly steep. Fourth, Roberts asserts that it had a safety committee and hard hats on hand. However, the ALJ found that Roberts lacked a structured safety plan, failed to ensure that the employees had actually read the safety manuals and failed to enforce the safety rules--including the hard hat rule. These findings are supported by substantial evidence. Finally, the ALJ did note that two of the four men at the site had unquestionably been in the trench while it was unshored and for a relatively brief time. Duration of exposure and the number of employees exposed are significant factors in the assessment of gravity. However, given how the lack of shoring, failure to enforce the hard hat rule, the absence of a ladder, the lack of an individual who is qualified to perform daily inspections to check for potential cave-ins and the failure to ensure that all the employees had received proper safety training may have compounded the dangers created by the instability of the soil, we cannot say that the Commission overestimated the gravity of the situation. The ALJ observed that "[t]renching is one of the most potentially deadly activities that can occur at a worksite." (4 AR 14 at 14.)
 
 
 7
 Roberts points to mitigating facts with respect to the gravity of the ground pin and acetylene tank violations. Roberts suggests that the duration of exposure had not been great since the ground pins were present the night before. However, we note that it was not the first time within the prior week or two that a ground pin had needed replacement on one of the two cords. The OSHA inspector observed that improper grounding could result in death by electrocution and that moisture in the soil and the proximity of steel pipes could increase the hazard. The ALJ found that the absence of the ground pins should have been noted and observed that perhaps it would have been if the employees had received proper instruction. As for the acetylene tank, the ALJ noted the OSHA inspector testified that a loose cylinder could be punctured or have its valve knocked off and thereby injure someone by becoming a projectile or by having its contents ignite to cause serious burns. Roberts stresses that one witness testified that the tank was empty and that a safety cap would prevent the valve from breaking off. However, the inspector testified that even a tank that was "empty" for work purposes still contained gas. Because he did not know the precise amount of gas, the inspector had reduced the proposed penalty due to the unlikelihood of its becoming a projectile. The ALJ chose a penalty equal in size. Although the gravity of the danger posed by the tank appears lower than the other violations, this disparity appears to have been reflected in a lower penalty.
 
 
 8
 Roberts also makes some observations with respect to the other statutory factors: size, good faith and the history of violations. First, Roberts concedes that it employed 150 employees at the time of the inspection. Second, Roberts emphasizes that the ALJ found that it had demonstrated good faith after the inspection. Despite the Secretary's contentions that such activities afterward cannot provide grounds for mitigation, we assume arguendo that the Commission could give this factor some small amount of weight, as it seems to have done. Third, the parties appear to agree that Roberts' relevant safety history consisted of three failed inspections. All three inspections occurred within five years prior to the inspection, with between seven and sixteen violations found each time. Only the third inspection yielded penalties ($960), and only one on-the-job injury, a twisted knee, was reported. The Secretary emphasizes that the computer search revealed no instances of Roberts passing an inspection without violations.
 
 
 9
 Despite its various observations, Roberts has not established that the Commission abused its discretion in light of the § 666(j) criteria. Some of the assessed penalties appear high. However, a penalty of up to $7,000 may be assessed for each of the eight serious violations. 29 U.S.C. § 666(b). Most of the penalties were for $4,000, and the one concerning the acetylene tank was for $2,800. They were well within the range of penalties. With respect to the gravity of the situation, we must give some deference (albeit not unlimited) to the Commission's greater experience with the relative dangers of the work environment. In light of the apparent danger, although not necessarily of long duration with respect to the lack of shoring and ground pins, Roberts has not shown an abuse of discretion.
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 The violations were: (1) failure to instruct each employee on the applicable safety regulations and on how to recognize and avoid safety hazards, 29 C.F.R. § 1926.21(b)(2) (1991); (2) failure to ensure that the employees wore hard hats while working in an area where head injuries could result from falling debris, 29 C.F.R. § 1926.100(a) (1991); (3) failure to secure an acetylene tank in a vertical position when transported by a powered vehicle, 29 C.F.R. § 1926.350(a)(4) (1991); (4) absence of a ground pin on an extension cord connected to the welding machine, 29 C.F.R. § 1926.404(f)(6) (1991); (5) absence of a ground pin on the cord to a grinder, 29 C.F.R. § 1926.404(f)(7)(iv)(c) (1991); (6) failure to provide a ladder or other safe means of egress, 29 C.F.R. § 1926.651(c)(2) (1991); and (7) failure to have a competent person perform daily inspections of the excavation, 29 C.F.R. § 1926.651(k)(1) (1991)
 
 
 [2]
 To the extent that Roberts may be implying that the Commission improperly abdicated its plenary authority in favor of the ALJ, we disagree. We do not believe that the Commission mistakenly thought that it needed to accord the ALJ's decision any special weight. Commissioner Foulke clearly stated the Commission reviewed the ALJ's conclusions de novo. The majority disagreed with Commissioner Foulke not because it felt bound to defer to the ALJ, but rather on the procedural ground that a petitioner could waive issues not adequately raised before the Commission. Roberts had not cited any specific errors to dissuade the majority from accepting the ALJ's assessments. The majority's reference to an abuse of discretion, which merely mirrors Roberts' own arguments, constitutes harmless error. Cf. Ortiz-Salas v. Immigration & Naturalization Serv., 992 F.2d 105, 108 (7th Cir.1993) (holding that reliance upon abuse of discretion standard was harmless error where it was clear that Board agreed with ALJ's conclusion)