FOGEL, District Judge,
dissenting.
Although I agree with much of the majority’s thorough analysis of the relevant legislative and regulatory history, I respectfully disagree with its ultimate holding. Because I conclude that the VA’s refusal to apply the presumption of 38 U.S.C. § 1116(a) to Haas and others similarly situated is inconsistent with the intent of the statute and thus is based upon an unreasonable interpretation of the subject regulation, I would affirm the judgment of the Veterans Court. See Haas v. Nicholson, 20 Vet.App. 257 (2006).
While judicial deference to the experience and expertise of administrative agencies is an important principle of our jurisprudence, the historical context in which both courts and agencies act also is important. The present case is the latest skirmish in a decades-long dispute between Vietnam-era veterans and the VA over the health effects of Agent Orange. In 1984, Congress enacted the Veterans’ Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98-542, 98 Stat. 2725 (1984) (“Dioxin Act”), the purpose of which was “to ensure that Veterans’ Administration disability compensation [was] provided to veterans who were exposed during service in the Armed Forces in the Republic of Vietnam to a herbicide containing dioxin....” Id. Following its enactment, a group of Vietnam-era veterans and surviving spouses brought suit against the VA for its alleged failure to comply with the Act’s provisions. Nehmer v. U.S. Vet *1198 erans Admin., 712 F.Supp. 1404 (N.D.Cal.1989).
Specifically, the veterans challenged the VA’s final rule, 38 U.S.C. § 3.311a(d), which stated that ‘“sound scientific and medical evidence does not establish a cause and effect relationship between dioxin exposure’ and any other disease but ehloracne.” Nehmer, 712 F.Supp. at 1408. The district court held that the “cause and effect test” employed by VA in 38 C.F.R. § 3.311a(d) to determine the relationship between dioxin exposure and various diseases was inconsistent both with the VA’s prior practice and with the purpose of the Act. Nehmer, 712 F.Supp. at 1418. In reaching this conclusion, the court relied on the statement of one of the Act’s principal supporters, Senator Alan Simpson, that the “[Dioxin] Act was intended to ensure that veterans ‘have their exposure claims adjudicated under uniform and consistent regulations that incorporate rational scientific judgments’, as opposed to the prior system, in which the claims are ‘committed to the sound judgment of the VA’s adjudication officers’ who decide them on ‘a case-by-case basis.’ ” Id. at 1422.
The statute at issue in this case, the Agent Orange Act, Pub.L. No. 102-04, 105 Stat. 11 (1991), was adopted subsequent to and informed by the issues raised in Nehmer. The Agent Orange Act required that the National Academy of Sciences conduct a comprehensive review of “all the available and future evidence on the longterm health effects of exposure” to herbicides. Haas, 20 Vet.App. at 268. It codified, in similar form, the 1984 note to 38 U.S.C. § 354, which the Dioxin Act amended, at 38 U.S.C. § 316(a)(3), which provided:
For the purposes of this subsection, a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the Vietnam era and has a disease referred to in paragraph (1)(B) of this subsection shall be presumed to have been exposed during such service to an herbicide agent containing dioxin or 2,4-dichlorophenoxya-cetic acid, and may be presumed to have been exposed during such service to any other chemical compound in an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service.
See Haas, 20 Vet.App. at 268.
As the majority points out, the legislative history of the Agent Orange Act is silent as to what constitutes “service in the Republic of Vietnam.” However, both the legislative history and the language of the statute itself indicate the intent of Congress that a fair and independent system be established to determine the relationship between herbicide exposure and the manifestation of certain diseases. Congress was seeking to make it easier, not more difficult, for Vietnam veterans to assert claims arising from exposure to Agent Orange. In this context, it is reasonable to expect that an administrative interpretation limiting the benefits of the presumption at issue here would be based on at least some scientific evidence.
I agree with the majority that in the present case the VA’s interpretation of its own regulation is entitled to controlling weight unless that interpretation is plainly erroneous or inconsistent with the regulation. Majority Opinion, at 1183. However, an interpretation is reasonable only if it “ ‘sensibly conforms to the purpose and wording of the regulations.’” Martin v. Occupational Safety & Health Review Comm’n, 499 U.S. 144, 150-51, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (quoting N. Indiana Pub. Serv. Co. v. Porter County Chapter of Izaak Walton League of Am., Inc., 423 U.S. 12, 15, 96 S.Ct. 172, 46 L.Ed.2d 156 (1975) (emphasis added)). I *1199 agree with the Veterans Court that in the absence of any scientific evidence in the record that supports a “foot on land” requirement, the VA’s position is unreasonable.
Congress created the presumption at issue both because exposure to Agent Orange could not be determined by tracking troop movements and because the VA could not pinpoint which veterans were deployed at or near locations where Agent Orange was sprayed, facts which as a practical matter made it very difficult for veterans to prove their claims. Although the plain purpose of the statute is to ensure that all veterans who risked exposure have their claims adjudicated in accordance with uniform, scientifically-based standards, the “foot on land” requirement arbitrarily excludes from the benefits of the statutory presumption an identifiable group of veterans who the available evidence suggests risked exposure.
For example, the VA’s interpretation grants the presumption to a veteran who served on a vessel that traveled on inland waterways but not to a veteran who served on a vessel in the waters immediately off the coast of Vietnam, even at no greater distance from land. A veteran whose only contact with Vietnam was a one-hour stop at an airfield would have the benefit of the presumption, while a veteran who spent months on a coastal patrol boat would not. Citing to the administrative record, the Veterans Court noted that “[ujsing VA’s risk-of-exposure test outlined in its June 2001 notice of final rulemaking, given the spraying of Agent Orange along the coastline and the wind borne effects of such spraying, it appears that these veterans serving on vessels in close proximity to land would have the same risk of exposure to the herbicide Agent Orange as veterans serving on adjacent land, or an even greater risk than that borne by those veterans who may have visited and set foot on land of the Republic of Vietnam only briefly.” Haas, 20 Vet.App. at 273. The Veterans Court concluded that “[t]he Secretary has provided no rational distinction between these types of service and tb(e Court can divine none.” Id. Appropriately, the Veterans Court held that:
Absent any discussion regar ling the scientific studies mandated by Congress on this subject or any other emdence that contributed to VA’s decision to limit the definition, the Court can only conclude that VA’s asserted interpretation of this regulation is not the product of agency expertise.
Id. at 275.
Perhaps anticipating that this Court might equally be concerned with the absence of relevant scientific evidence, the VA submitted to the Court during the pendency of this appeal proposed amendments to the regulation that expressly adopt the “foot on land” test and explain the agency’s rationale for the amendments. The VA acknowledges the possibility that some veterans who were deployed immediately offshore may have been exposed to herbicides but at the same time asserts there is no evidence that the risk of such exposure was comparable to that faced by veterans who were deployed on land. The VA reaches this conclusion not on the basis of any affirmative data but by discounting the findings of the Australian study upon which Haas and others similarly situated rely. Like the VA’s most recent interpretation of the regulation, the proposed amendments appear to be based on uncertainty rather than the careful scientific assessment required by the statute. Thus, despite the clarifying language, I remain convinced that the VA’s interpretation is not entitled to deference.
The majority concludes that the “foot on land” rule is rational because there appears to be no clear* scientific evidence defining the extent to which different *1200 groups of veterans were exposed, leaving the task of line-drawing to Congress and the VA. Majority Opinion at 1192. Indeed, an interpretation that excludes veterans whose only contact with the Republic of Vietnam was a high-altitude flyover or service in deep offshore waters would be perfectly sensible, as such individuals would not have had a potential risk of exposure. See DVA Op. Gen. Counsel Prec. 27-97 (1997) (finding that service in a deepwater vessel off the shore of Vietnam did not constitute “service in the Republic of Vietnam” under 38 U.S.C. § 101(29)(A)); DVA Op. Gen. Counsel Prec. 7-93 (1993) (finding that service in high altitude planes flying over Vietnam without any further contact with Vietnam did not constitute “service in the Republic of Vietnam” under 38 C.F.R. § 3.313). However, veterans like Haas who have asserted a reasonable claim that they may have been exposed to herbicides deserve to have such claims “adjudicated under uniform and consistent regulations that incorporate rational scientific judgments.” See Nehmer, 712 F.Supp. at 1422.[1] It is the VA’s burden, not the veterans’, to show that the VA’s line-drawing was both informed by scientific evidence and consistent with the remedial purposes of the statute. Because I agree with the Veterans Court that the VA has not met that burden, I respectfully dissent.

. The majority notes that the Veterans Court did not cite any specific record evidence in support of Haas’s position and opines that any interpretation other than the "foot on land” test would be "unmanageably vague.” Majority Opinion at 1195. Haas received the Vietnam Service Medal for his service in the Republic of Vietnam. As the Veterans Court pointed out and as the majority acknowledges, id. at 1187-88, the VA itself previously applied the presumption in cases in which a veteran received the Vietnam Service Medal or the veteran’s "ship was in the vicinity of Vietnam for some significant period of time.” See Haas, 20 Vet.App. at 271-272 (citing M21-1, part III, paragraph 4.08(k)(l)-(2)). I have no reason to doubt that the VA could develop a manageable and consistent standard that would include veterans such as Haas.