21-486-ag
Martin J. Walsh v. Walmart, Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2021

(Argued: June 7, 2022                                    Decided: October 4, 2022)

Docket No. 21-486-ag

_____

MARTIN J. WALSH, SECRETARY OF LABOR,

*Petitioner*,

v.

WALMART, INC., OCCUPATIONAL SAFETY
AND HEALTH REVIEW COMMISSION,

*Respondents*.

_____

Before: POOLER, LOHIER, and NARDINI, *Circuit Judges*.

The Department of Labor brings this petition seeking review of a final order issued on December 31, 2020 by the Occupational Safety and Health Review Commission. The Commission found the phrase "stored in tiers" in the

second sentence of 29 C.F.R. § 1910.176(b) did not apply to pallets of merchandise located in a Walmart Distribution Center in Johnstown, New York. Because the Secretary of Labor's interpretation was reasonable, we vacate the judgment and remand for further proceedings.

Vacated and remanded.

_____

JUAN CARLOS LOPEZ, Senior Attorney, U.S. Department of Labor (Seema Nanda, Solicitor of Labor, Edmund C. Baird, Associate Solicitor for Occupational Safety and Health, Louise M. Betts, Counsel for Appellate Litigation, Anne E. Bonfiglio, *on the brief*), Washington, D.C., *for Petitioner Martin J. Walsh, Secretary of Labor*.

RONALD W. TAYLOR, Venable LLP (Benjamin E. Stockman, *on the brief*), Baltimore, MD, *for Respondent Walmart, Inc.*

POOLER, *Circuit Judge*:

Martin J. Walsh, the United States Secretary of Labor, seeks review of a final order issued on December 31, 2020 by the Occupational Safety and Health Review Commission (the "Commission"). This case arose after an employee at a Walmart distribution center in Johnstown, New York (the "Distribution Center")

was injured when merchandise fell approximately 40 feet from shelving above her. The Occupational Safety and Health Administration ("OSHA") inspected the workplace and issued Walmart a serious citation on the ground that the company violated 29 C.F.R. § 1910.176(b), the "Secured Storage Standard," which pertains to the safety of stored materials and states:

> *Secure storage.* Storage of material shall not create a hazard. Bags, containers, bundles, etc., stored in tiers shall be stacked, blocked, interlocked and limited in height so that they are stable and secure against sliding or collapse.

*Id.* OSHA proposed a $10,864.00 penalty.

Following a hearing, an administrative law judge ("ALJ") affirmed the serious citation and the proposed penalty, finding that Walmart violated Section 1910.176(b). Walmart then filed a petition for discretionary review of the ALJ's decision before the Commission.[1] The Commission determined that Section 1910.176(b) did not apply because the first sentence of the standard was merely

---

[1] To achieve the Occupational Safety and Health Act of 1970's objective of ensuring "safe and healthful working conditions," the Act "assigns distinct regulatory tasks to two different administrative actors: the Secretary of Labor (Secretary); and the Occupational Safety and Health Review Commission (Commission), a three-member board appointed by the President with the advice and consent of the Senate." *Martin v. Occupational Safety & Health Rev. Comm'n*, 499 U.S. 144, 156 (1991) (citing 29 U.S.C. §§ 651(b)(3), 661).

precatory language. A majority of the Commission held the standard applied only if the material at issue was "stored in tiers," which they concluded did not apply to the way Walmart stores its merchandise at the Distribution Center. App'x at 284-85.

On appeal, the Secretary argues that Section 1910.176(b) applies in this case, as the plain meaning of the word "tiers" unambiguously covers materials arranged one above another, which is how Walmart stores its merchandise at the Distribution Center. The Secretary also argues that even if the standard were ambiguous, we should defer to the Secretary's interpretation because it is reasonable. Finally, the Secretary argues that the record conclusively establishes that Walmart violated Section 1910.176(b) by exposing its employees to the hazard of stored material falling from the tiered racking.

Because the Secretary's interpretation of the meaning of the word "tiers" in Section 1910.176(b) as applying to the pallets stored at the Distribution Center is reasonable, we vacate the Commission's order. We remand so that the Commission may apply the correct standard to determine whether Walmart violated Section 1910.176(b).

## BACKGROUND

**I.** **The Workplace Incident**

On February 25, 2017, an employee, Jessica Saltsman, was seriously injured while working at Walmart Distribution Center No. 6096 in Johnstown, New York. Saltsman worked as an order filler in the perishable section and was filling orders by placing merchandise onto pallets. In the aisle next to Saltsman, Melanie Boggie, another Walmart employee, was retrieving a pallet from the highest level of racking with a forklift when she inadvertently pushed a pallet holding containers of crescent rolls. The pallet tipped, causing containers of crescent rolls to fall. Most fell into the open gap between the load-bearing beams, but several fell into the aisle where Saltsman was working, striking her on the head, shoulders, and back from an estimated height of 40 to 50 feet. According to Saltsman's uncontroverted testimony before the ALJ, her long-term injuries included vertebral displacement and loss of curvature in her neck, as diagnosed by a doctor and chiropractor.

**II.** **Walmart's Storage of Materials**

The Johnstown Distribution Center stores its packaged merchandise in pallets and then places those pallets on "selective racking." App'x at 64. As shown in the photos excerpted below[2], the selective racking system has two orange beams, one in the front and one in the back, that serve as load beams on which the stored merchandise is placed in pallets. The racking systems are then placed back-to-back, with items on each pallet stacked directly on top of each other, although the pallets themselves are not stacked on top of each other directly, causing a 42-inch-wide gap under the pallets. The tallest slot is approximately 40 to 50 feet high.[3] The racks are arranged such that the pallets are two-deep, back-to-back. Employees load and unload merchandise using aisles between the sets of racks.

---

[2] The photos are excerpted exactly as they were shown in the appendix. There was no elaboration about what the lettering on the photos purports to show.
[3] Walmart points to the testimony of Paul Lund, the manager of the Distribution Center, that the height of the racking varies from 28 to 32 feet high. However, the ALJ credited Saltsman's testimony as to the height. We need not resolve this minor factual issue as our analysis is limited to the language of the statute.





App'x at 99-100.

Employees who fill orders, such as Saltsman, move through the aisles and retrieve the merchandise from the lowest two levels of the storage racks

manually. Merchandise on the upper shelves is replaced and retrieved using forklifts to lift the pallets onto and off the shelves.

### III.   OSHA's Investigation

On March 28, 2017, OSHA Compliance Safety and Health Officer Charles Harvey inspected the Johnstown Distribution Center based on a complaint concerning an employee injury and unsafe conditions. Harvey took photographs of the selective racking system, conducted employee interviews, and obtained training records. He observed that merchandise was at a risk of falling off because of the way the pallets were stored. An employee told Harvey that merchandise frequently fell through the storage racks and landed in the aisles, and that it was a hazard that needed to get fixed to avoid somebody getting injured. Harvey also spoke with the general manager, Paul Lund, who indicated that he was aware of the condition of stored material falling through the racking and that he had the authority to fix it. Lund stated he had investigated the possibility of installing front-to-back racking, but he had not gotten the funding from corporate to make such repairs.

After the investigation, OSHA issued Walmart a serious citation alleging the company violated 29 C.F.R. § 1910.176(b) by exposing employees "to struck-

by hazards from unstable material storage," and assessing a $10,864.00 penalty. App'x at 4.

### IV. The ALJ Decision

On December 19, 2017, ALJ Keith Bell held a hearing on the merits of the citation. Notably, Walmart did not dispute that the pallets stored in its selective racking system were "stored in tiers" within the meaning of Section 1910.176(b) at the hearing or in its post-hearing brief, instead arguing before the ALJ that the pallets were not covered by the standard because the materials were moved in and out of storage and were therefore not "stored."

ALJ Bell first determined that Section 1910.176(b) applied to Walmart because the materials were dislodged from a pallet that was on Walmart's storage rack. The ALJ rejected Walmart's argument that the material that fell was "not covered by [the] standard because it was in the process of being placed into storage," instead finding the materials that were displaced and fell were already stored on the racks. App'x at 156. ALJ Bell determined that the Commission had previously held that stacked material must be stable and secure even when struck by forklifts. The ALJ further determined that, although Walmart contended that Saltsman entered a 20-foot zone while a lift driver was retrieving

9

a pallet from the top level, against company rules, both Harvey and Saltsman testified that employees regularly entered this zone.

The ALJ concluded that Walmart had knowledge of the presence of the violative condition. Evidence included Saltsman's testimony that items would fall three to four times during her work week and that she informed managers of her concerns, but that her concerns were ignored. Harvey also testified that an unnamed male employee told him that material frequently fell through the racks, that Lund told him he was aware of the hazard, and an asset protection manager told him that materials fell off the racking system, causing a pallet to tip or fall a couple times a month.

ALJ Bell also held that Walmart was precluded from asserting an unpreventable employee misconduct defense because it failed to raise the defense before the hearing. The ALJ determined that the penalty was serious because there was a substantial probability of death or serious physical harm, crediting Saltsman's uncontroverted testimony that she had severe spinal injuries and had to transfer departments. The ALJ affirmed the penalty of $10,864.00. Finally, the ALJ denied the request for six months to abate the cited conditions because the company made the request only in its post-hearing brief.

10

## V. The Commission Decision

On December 31, 2020, the Commission granted Walmart's petition for discretionary review of ALJ Bell's decision, and a two-member majority vacated the citation. The Commission decided that the first sentence of the standard, that "[s]torage of material shall not create a hazard," is "merely a precatory or hortatory introduction to the second sentence, which contains the operative, specific requirements of the provision." App'x at 284. The Commission stated that the "sheer breadth and generality" of the first sentence, if interpreted as creating a separate obligation, "could raise serious vagueness concerns." App'x at 285.

Therefore, the Commission decided that Section 1910.176(b) applies only if the material at issue is "stored in tiers," pursuant to the second sentence of the standard, which states in full: "Bags, containers, bundles, etc., stored in tiers shall be stacked, blocked, interlocked and limited in height so that they are stable and secure against sliding or collapse." The standard does not define "tier," so the Commission looked to Webster's Dictionary to determine the "ordinary meaning" of the word. App'x at 285. Webster's Dictionary defines "tier" to mean "'a row, rank, or layer of articles,' and 'one of two or more rows arranged one

11

above another.'" App'x at 285 (citing WEBSTER'S THIRD INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 2391 (1971)).

The Commission stated that "[t]he definition's reference to a 'layer,' along with its example of 'tier upon tier of huge casks,' plainly narrows the meaning of the term to articles stacked one on top of another with nothing in between." App'x at 285-86. The Commission pointed to the 1971 edition of Webster's Dictionary, which defined "tierable" as "suitable for stacking," as "further support[ing] the notion that 'tier,' as used in this provision, applies only to material stacked directly one upon another." App'x at 286 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 2391 (1971)). The Commission likened the definition to tiers on a wedding cake, which "consists of individual layers that sit directly upon the layer below." App'x at 286.

The Commission concluded that "there is simply no evidence that the pallets at issue were ever stacked one upon another," and noted that "[w]hile photographic evidence shows that the industry-standard selective racking levels in Walmart's distribution center were themselves arranged one above another, there is no dispute that each rack level had one pallet, with space between the

top of the merchandise on each pallet and the bottom of the next rack level." App'x at 286. The Commission then reversed the ALJ's decision and vacated the citation.

The dissenting member of the Commission took a different approach, writing that OSHA standards must be interpreted in accordance with the natural and plain meaning of their words. The dissent pointed out that the pallets in Walmart's distribution center hold assorted merchandise that is often wrapped or bound together, making them "containers" or "bundles." App'x at 287. And the rack levels on which the pallets rest are arranged one above another, making them "tiers" within the meaning of the standard. App'x at 287. The dissent looked at the plain language of the standard, as well as OSHA guidance, to determine that Section 1910.176(b) applied to the Distribution Center. The dissent explained that the plain language did not restrict the definition of tiers to include only layers stacked one above another with no space in between.

## DISCUSSION

### I.     Standard of Review

We will set aside an order by the Commission if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §

13

706(2)(A); *see Solis v. Loretto-Oswego Residential Health Care Facility*, 692 F.3d 65, 73 (2d Cir. 2012). We review legal conclusions de novo, deferring as appropriate to the Secretary's reasonable interpretation of the Occupational Health and Safety Act. *See id.* We must uphold factual findings if they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 660(a); *see Solis*, 692 F.3d at 73.

We "review the Secretary's interpretation to assure that it is consistent with the regulatory language and is otherwise *reasonable*." *Martin*, 499 U.S. at 156 (emphasis in original). "[A] reviewing court may not prefer the reasonable interpretations of the Commission to the reasonable interpretations of the Secretary," and the Supreme Court has "emphasize[d] that the reviewing court should defer to the Secretary only if the Secretary's interpretation *is* reasonable." *Id.* at 158 (emphasis in original). Thus, the Secretary's interpretation of an OSHA standard is entitled to substantial deference, "so long as it is reasonable, that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations." *Id.* at 150-51 (internal quotation marks and citations omitted).

**I.** **Applicability of Section 1910.176(b) to Merchandise that Walmart Stored on Tiered Racks**

14

## A. The Secretary's Interpretation

To establish a violation of an OSHA standard, the Secretary must demonstrate by a preponderance of the evidence that: "(1) the cited standard applies; (2) the terms of the standard were violated; (3) the employer knew, or with the exercise of reasonable diligence could have known, of the violative condition; and (4) one or more employees had access to the cited condition." *Triumph Constr. Corp. v. Sec'y of Labor*, 885 F.3d 95, 98 n.3 (2d Cir. 2018). The Commission considered only the first prong, ending its analysis after determining that the standard did not apply.

The Secretary argues that the Commission erred in finding Section 1910.176(b) inapplicable to Walmart's tiered storage system because it unambiguously includes material placed or arranged one above another in tiered storage racks, such as the system used at the Distribution Center. Alternatively, the Secretary also argues that if the Court finds the regulation ambiguous, the Court should defer to the Secretary's reasonable interpretation.

Courts have "often deferred to agencies' reasonable readings of genuinely ambiguous regulations," in what is commonly called *Auer* deference. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2408 (2019); *see also Auer v. Robbins*, 519 U.S. 452 (1997).

15

*Auer* deference is not afforded to an agency's interpretation of its regulation "unless the regulation is genuinely ambiguous." *Kisor*, 139 S. Ct. at 2415. "If uncertainty does not exist, there is no plausible reason for deference. The regulation then just means what it means—and the court must give it effect, as the court would any law." *Id.*

The second sentence of the standard states: "Bags, containers, bundles, etc., stored in tiers shall be stacked, blocked, interlocked and limited in height so that they are stable and secure against sliding or collapse." 29 C.F.R. § 1910.176(b). As the standard does not define the term "tier," the Commission looked to the dictionary definition.

The Commission cited to Webster's Dictionary, which defines tier as "'a row, rank or layer of articles,' and 'one of two or more rows arranged one above another.'" App'x at 285 (citing WEBSTER'S THIRD INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 2391 (1971)). But rather than credit this definition, the Commission focused on a single word: "layer." Nothing in the word "layer" itself suggests one way or the other whether objects must be placed directly on top of each other. And in cherry-picking the word layer, the Commission overlooked the fact that Webster's also defines "tier" as a "row," or

16

"rank," something that would encapsulate the shelving system that the Distribution Center uses.

As shown in the photos excerpted above, there are crossbeams that create a shelf upon which Walmart stores its pallets. It is reasonable to conclude, as the Secretary did here, that these shelves form "tiers" upon which Walmart stores its containers of materials (i.e., the pallets). The Commission's cramped definition ignores other types of tiers, including seating arrangements at sporting events and music venues with layers of seats that are independently supported and placed one over the other with gaps between them.

Such an interpretation is found in other dictionaries that were published around the time the standard was published. The American Heritage Dictionary from 1969 defines "tier" as "[o]ne of a series of rows placed one above another." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1344 (1969). And the Oxford English Dictionary from 1971 defines "tier" as: "a row, rank, range, course; usually one of a series of rows placed one above another, or at least rising each above the preceding one; e.g. tiers of galleries, shelves, boxes in a theatre, or seats on a sloping floor." THE COMPACT EDITION OF THE OXFORD ENGLISH DICTIONARY 3319 (1971).

These dictionaries make clear that the definition of "tier" may be broader than what the Commission found. The Commission focused on a single word contained within one dictionary to create a limited definition. Nowhere does the definition of "tier" include the notion that the materials must be stacked immediately on top of each other.[4] In fact, one definition explicitly states that shelves, such as those Walmart uses to store its merchandise, fall within the definition of tiers. *See* THE COMPACT EDITION OF THE OXFORD ENGLISH DICTIONARY 3319 (1971).

The Commission also pointed to a related word, "tierable," which is defined as "suitable for stacking," and argued this "further support[ed] the notion that 'tier' . . . applies only to material stacked directly one upon another." App'x at 286 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 2391 (1971)). Yet, the drafters of the standard did not use the word "tierable," and there is nothing that so narrows the plain

---

[4] And we note, as the dissenting commissioner did, that even in the Commission's examples, the tiers stacked on top of each other often include materials in between. For example, a well-made cake will include buttercream between the tiers, for added flavor and stability. And intricate cakes include dowels inside, as well as decorative pillars, for added support.

language of "suitable for stacking" to mean that materials must be directly on top of each other with nothing in between.

Walmart argues that the language in the rest of the standard unambiguously mandates restricting the definition of "tier" to only materials stacked on top of each other directly. The standard states: "Bags, containers, bundles, etc., stored in tiers shall be stacked, blocked, interlocked and limited in height so that they are stable and secure against sliding or collapse." 29 C.F.R. § 1910.176(b). Walmart claims that this language limits the definition of tiers to items that can be stored by stacking, blocking, or interlocking them, suggesting that only items that are placed directly on top of each other can be stored in such a manner so that they are stable and secure.

Walmart's argument is unavailing. The standard contains no such limiting language. There is nothing inconsistent in the remaining language of the standard that militates against an interpretation that shelves can be tiers. For example, bags, containers, and bundles can be stacked on shelves and can become unstable and insecure. Here, the pallets stored on the selective racking became unstable and merchandise on the pallets fell.

19

Even if we were to find that the Commission's interpretation was reasonable, the Secretary's interpretation would prevail, as it is entitled to substantial deference "so long as it is reasonable, that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations." *Martin*, 499 U.S. at 150-51 (internal quotation marks omitted); *see also Kisor*, 139 S. Ct. at 2415. We conclude that the Secretary's competing interpretation of the language of the standard is reasonable.

As a general matter, the Secretary argues that the purpose of the standard was to prevent stored materials from falling and striking those below. The Secretary reasonably interprets the plain language of the standard to apply to material arranged one above another vertically, including on shelves, not just materials stacked directly on top of another. As the Secretary points out, if we followed the Commission's interpretation, "even the storage of items on a patently unstable shelving unit that was subject to toppling over would be exempt from the standard's coverage simply because the items on the shelves were not 'stacked directly upon one another with nothing in between.'" Petitioner's Br. at 25 (citing App'x at 286). Such an interpretation is not consistent with the text or the purpose of the standard.

20

## B. The Record Evidence

The last issue is whether there is sufficient record evidence that Walmart violated Section 1910.176(b). The Commission did not reach this issue because it found the standard did not apply. To establish a violation of an OSHA standard, the Secretary must demonstrate that: "(1) the cited standard applies; (2) the terms of the standard were violated; (3) the employer knew, or with the exercise of reasonable diligence could have known, of the violative condition; and (4) one or more employees had access to the cited condition." *Triumph*, 885 F.3d at 98 n.3. We hold that the first prong of the test is met. Because the Commission did not resolve these remaining factors, we remand for further proceedings.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the Occupational Safety and Health Review Commission and remand for further proceedings consistent with our decision.